EARLY *et ux. v.* STREET *et ux.*

(*Knoxville*, September Term, 1950.)

Opinion filed June 16, 1951.

464

MILLER, MILLER & MARTIN, of Johnson City, for appellants.

GREEN & BRANDT, of Johnson City, for appellees.

MR. JUSTICE BURNETT delivered the opinion of the Court.

Petition for certiorari has been heretofore filed, granted and argument heard thereon.

This is a suit for rescission of a deed, based on fraudulent misrepresentation and a parol agreement to rescind. The cause was heard before the Chancellor on oral testimony in part (the principal witnesses supporting both sides, testifying orally), and on depositions.

The Chancellor and the Court of Appeals concur, in substance and in effect, in finding the facts to be: Mr. and Mrs. Early, appellants, complainants below, were residents of West Virginia but for the sake of Mr. Early's health they decided to move to Johnson City, Tennessee, where Mrs. Early's mother had lived for some four or five years. Mrs. Early's mother recommended the appellee, defendant below, to the Earlys as a reputable and fine real estate man. On this recommendation the Earlys went to Mr. Street for the purpose of trying to purchase a home. On August 16, 1949, Mr. Street showed them

various and sundry properties and finally sold them the property here in question. It was a frame house and was undergoing extensive repairs when inspected on August 16, 1949. After some discussion the complainants decided to buy the house for $3,450, and made a deposit of $1,750 for which they took Street's receipt. The balance was financed by Street placing a mortgage on the property payable at so much per month. This mortgage was for $1,800 but the difference was eventually settled. The Earlys were in a hurry to get back to West Virginia and after this trade was made Street took them to the bank, after hours, and got the $1,750 as the down payment. Street assured these parties that the property was worth more than $3,500, would make a much better show when the repairs were complete, was in a good neighborhood with no colored folk near, and if they later became dissatisfied he would be glad to refund their money. "To strengthen his promises, these witnesses say, the defendant assured them that he was worth $100,000.00, a good member of and a contributor to the church, and therefore would not go back on his word if he could." Defendant admits that "he told the complainants he had more than $100,000.00 worth of property tied up in real estate and that he had given several hundred dollars to the church" but says that this was general conversation occurring several days after the deposit. (Finding of the Chancellor.)

After this purported sale, on August 16, the Earlys returned to West Virginia. While they were gone Street called up the mother of Mrs. Early and told her that he had an offer of $3,600 for the property and asked if the Earlys wanted to sell. On Sunday the 28th of August, the Earlys came back to Johnson City and contacted

Street on August 29th. When the complainants came back they examined the property and were not satisfied with the repairs and work that had been done, a number of doors were not in and at least one door was merely planked up. Then they asked the defendant to refund their money and he refused to do so saying that his money was all tied up in real estate, but that he would sell the property for more than they had in it. Street seems to have convinced the Earlys that he could do this but to do so it was necessary for them to accept and record the deed that Street and his wife had made to the Earlys on August 27th, the day before the Earlys returned to Johnson City from West Virginia, and after convincing them of this fact he took the Earlys in his car from Johnson City to Jonesboro, a distance of 6 or 8 miles, and had the deed registered. While on the way from Johnson City to Jonesboro Street gave the deed to Mrs. Early. After the deed was registered Street gave the Earlys a check for $55 which they accepted, endorsed and cashed as the difference between the $1,800 mortgage that he had put on it and $1,700 which was supposed to be on it, after deducting the registration fees and the cost of title insurance which Street had procured. We are convinced, as was the Chancellor, that this deed was not accepted by the Earlys in the sense of accepting it as concluding the trade but the acceptance was only upon the persuasion of Street that it was necessary that this be done so that he could re-sell the property. The weight of the proof is that the Earlys did not want any profit back if the property was re-sold but merely wanted their money back.

The proof shows, and the Chancellor found, that there were colored people living some 4 or 5 doors below this

house; that the property was sold for at least $500 in excess of its fair market value, but that "these two matters, of colored neighbors and overvaluation, however, do constitute strong equities in complainants behalf" but are not sufficient within themselves to warrant rescission.

The Chancellor then found as follows, in which we fully concur:

"It is on the prime issue of the parol agreement to rescind that complainants find firm support in the proof. It is true that complainants' corroborating witnesses are relatives, but their testimony is credible, and it is hard to imagine that the invalid daughter, Verra Underwood, would not detail this transaction truthfully. Defendant admits that the Underwoods are high quality people but says that they are simply mistaken. Is it not more probable that they would remember accurately a single, and to them unusual, transaction in which they were vitally interested? This was, in contrast, one among many of defendant's business relations. He admits that he extolled his virtue and financial responsibility, and it is very plausible that this was to fortify a promise. He admits that he might have agreed to take the property back, on the event of the buyers' dissatisfaction, as a credit on other property. It seems very plausible that the five witnesses, as they swear, understood him to agree instead to a rescission. And an experienced realtor should be bound by the understanding he conveyed to reasonable auditors, rather than by his afterward more clearly expressed thought.

"Having regard to the rule that parol proof of an agreement to rescind must be 'clear and convincing', *Walker* v. *Wheatly,* 21 Tenn. 119; Annotation 94 A. L. R.

1278, I am satisfied that complainants have carried the burden, and that defendant either made or created the impression that he made such an agreement, and should in either event be bound.

"Complainants' actions were not altogether consistent with an agreement to rescind, but they, especially Mr. Early, are highly inexperienced laymen. They proceeded promptly after consulting counsel, and the very few days delay are not shown to have prejudiced defendant. . . .

"Applying these principles in our case it is at once apparent that the defendant's deed was not intended to be the complete agreement. By undisputed testimony there was the separate agreement in regard to financing, the separate agreement in regard to repairs and improvements, and by convincing evidence, also the option to rescind conferred on the purchaser.

"Viewed as a condition subsequent on which the conveyance could be nullified, or viewed as an independent agreement coming into operation only on the happening of a condition, the parol agreement to rescind is believed here to be admissible under the reasoning of the authorities just cited."

The facts were sharply in dispute by the witnesses before the Chancellor on the respective sides. Where the witnesses appear before a Chancellor, and present a state of facts squarely to him, his decision of the credibility of the several witnesses is final under the circumstances.

After handing down the memorandum above quoted from the Chancellor then ordered rescission. In due season the defendant filed a motion for new trial. Upon consideration of this motion for a new trial the Chancellor reversed his conclusions in the memorandum above referred to primarily because he was convinced that an

unreported opinion of ours, *Bransford Realty Co.* v. *Deeds,* was controlling on the question of the admission of parol evidence. In the second memorandum the Chancellor quoted from the Bransford opinion that the opinion "held the agreement to re-purchase as 'in effect converting the transaction into a sale on condition, and varying the plain terms of the deed.' This is a direct opposite of my reasoning in the former opinion, and of course must control, whether or not it serves what this court regards as the equities of a single case."

The Chancellor then handed down a second memorandum opinion affirming his finding of fact of the first memorandum but ordering the bill dismissed because he felt that he was in error in admitting parol evidence. The Earlys appealed to the Court of Appeals and that Court affirmed the Chancellor on the parol evidence question and as a second ground for affirming the dismissal held in effect that the Earlys by accepting the deed and recording it were estopped to now bring an action to rescind the deed.

After very carefully reading this record and giving the matter much consideration we are convinced that there was no delivery or acceptance of this deed by the Earlys in the sense of accepting it as their property. They were made to believe by Street that it was necessary for them to record the deed so that he might re-sell the property and get their money out of it for him. That was their only purpose as is clearly shown by the weight of the proof. The proof also shows that they did not want or expect anything except their money back. Mrs. Early says: "He said that he would not give us the money back; but he would sell it, and that he would advertise it for $3,950.00, and that he would give us what he made over,

and I told him that I did not want anything except what I had in it." This statement of Mrs. Early is made in reference to the time the deed was put in her lap on the way from Johnson City to Jonesboro, in Street's car.

We reached this conclusion largely by Street's actions and the actions of the complainants herein. Why was Street so insistent on driving the complainants several miles from Johnson City to the County Seat to see that the deed was recorded? The obvious answer is that he thought that by doing this, this would settle all matters and relieve him from his prior promises that he had theretofore made. These promises as we have hereinabove indicated were found to have been made by Street by the Chancellor. We wholly concur in the finding of the Chancellor on these factual situations.

 Delivery of a deed is a matter of intention which of course may be inferred from circumstances. *Thompson* v. *Jones,* 38 Tenn. 574, 576; *Farrar* v. *Bridges,* 24 Tenn. 411; *Nichols* v. *Davidson County,* 3 Tenn. Ch. 547.

 The very action of these parties, the complainant, shows that they did not acquiesce in or intend to accept this deed for the purpose of considering it as an acceptance. They immediately employed counsel and the present suit was brought within 10 days after the recordation of the deed. This does not show acquiescence by any means. For Street to set up the doctrine of equitable estoppel to protect himself by reason of the recording of his deed he certainly should have to show the utmost good faith and diligence before he is allowed to so plead. We are convinced that Street is not entitled to take advantage of the application of the doctrine of estoppel under the facts as presented in this case.

This brings us then to the question for determination of the suit. Is the parol evidence heretofore referred to admissible as was held in the first memorandum opinion of the Chancellor?

"The general rule is that parol evidence is not admissible to contradict a written agreement, whether simple or by deed." *McGannon* v. *Farrell,* 141 Tenn. 631, 637, 214 S. W. 432, 433.

"There are a great many cases in our Reports upon the general subject; some stating the rule, and some the exceptions to the rule. It is often difficult to decide when a case falls within one of the exceptions. The rule is that the contract cannot be contradicted or varied by parol. There are exceptions to the effect that an independent collateral agreement may be proven, and also that, when a prior parol contract is only partly reduced to writing, parol evidence may be heard to supply the parts omitted from the writing." *Johnson* v. *Continental Ins. Co.,* 119 Tenn. 598, 107 S. W. 688, 689.

The application of the rule and the various exceptions thereto have led to innumerable decisions. Suffice it to say that the facts of each case must control in applying the rule and the exceptions. Here we presumably have a deed which expresses the full agreement of the parties insofar as the conveyance of the property is concerned, but the parties contemporaneously with and prior to the execution of this deed entered into a distinct collateral agreement. Under such circumstances the Court should permit parol or extrinsic evidence, so long as such evidence is not inconsistent with, and does not contradict, the deed.

When is the Court to determine whether the alleged oral agreement is separate and distinct from or collateral

to the deed? In answering this question it seems to us that the authors of A. L. R. have given a very practical and satisfactory answer when they say that the "test for determining whether the alleged oral agreement is distinct and separate from the contract evidenced by the writing, so as to permit proof thereof by parol or extrinsic evidence not inconsistent with or contradictory to the writing, is whether the oral agreement is one which, considering the circumstances of the parties, the subject-matter, and the nature of the writing, would ordinarily have been embodied in the written instrument, had the parties intended that they should be bound thereby." 70 A. L. R. 759.

▮ Applying this test to the facts of the case now before us it is perfectly obvious that it certainly was not the intention of the parties, nor did they deem it necessary to incorporate all of these collateral agreements in the deed. The deed was merely the evidence of conveyance from Street to the Earlys. The collateral agreements were made by Street, he representing himself to them as being a church man and a man of his bond and a wealthy man, etc., to convince them of the fact that he would live up to this collateral agreement that he made to the deed, that is, for a rescission, provided he did not finish building or repairing the house according to his contract with them. Under such circumstances it seems to us that the Chancellor was correct in his first opinion when he considered this parol evidence and on this evidence based the finding that he did in his first memorandum opinion.

A number of cases are collected in *Mitchill* v. *Lath,* 247 N. Y. 377, 160 N. E. 646, 68 A. L. R. 245, showing the application of this principle, likewise cases are there cited

474

showing the opposite. We though, are satisfied that the principle that we adopt is the most equitable and reaches the justice of the situation.

This Court in denying certiorari in the case of *Haynes* v. *Morton,* 32 Tenn. App. 251, 222 S. W. (2d) 389, has to all intents and purposes approved what has above been said. In that case, *Haynes* v. *Morton,* supra, a very similar state of facts was presented to that presented in the case now before us. In that case the Court of Appeals very ably sets forth the rule and concludes that under the circumstances, very similar to those involved in the instant case, that parol evidence may be heard.

The right of the Court to order recission is discretionary with the Court, but the Court should exercise this discretion very sparingly and only award it "in case where some such element as actual fraud, accident, mistake or insolvency . . . appear to justify it." *McMillan* v. *American Suburban Corp.,* 136 Tenn. 53, 188 S. W. 615, 617, L. R. A. 1917B, 401. The facts of this case justify such drastic action.

We think *Bransford Realty Co.* v. *Deeds,* unreported, as relied upon by the Chancellor in his second memorandum herein is not authority for the proposition that we have been considering. In the Bransford case it seems to us, after a careful consideration of the entire opinion, that the rule therein applies peculiarly to the facts of that case and that the determination by the court therein was based primarily on the facts as shown by the record. For these reasons we feel that the first memorandum opinion of the Chancellor herein was correct and that a decree should be drawn as therein directed. The judgment below, for the reasons above expressed, is reversed and the cause remanded to the Chancery

Court where a decree will be entered in compliance with the first memorandum opinion rendered by the Chancellor herein and for the enforcement thereof. The costs of the cause will be taxed against the appellee, Street.

All concur.