**SANTA BARBARA CAPITAL CORPORATION, Appellant,**

v.

**WORLD CHRISTIAN RADIO FOUNDATION, INC., Appellee.**

Court of Appeals of Tennessee,
Western Section.

Sept. 12, 1972.

Certiorari Denied by Supreme Court
March 19, 1973.

Duncan, Breazeale & Secor, Chattanooga, for appellant.

Witt, Gaither, Abernathy & Wilson, Chattanooga, for appellee.

NEARN, Judge.

A replevin action was instituted in the Chancery Court of Hamilton County by the complainant Santa Barbara Capital Corporation, hereinafter referred to as Santa Barbara or complainant, seeking recovery of the World Christian Radio Foundation, hereinafter referred to as Foundation or defendant, of certain radio broadcasting equipment. In addition, complainant sought judgment against the Foundation for damages for breach of a certain lease agreement by which agreement the Foundation had originally obtained possession of the radio broadcasting equipment.

The Foundation answered the Original Bill, admitted that complainant was entitled to possession but denied any wrongful detention and further denied that Santa Barbara was entitled to damages. The answer was accompanied by a cross-bill which sought damages from Santa Barbara for its alleged breach of the lease agreement and prayed that the lease be rescinded as null and void.

The Chancellor, having heard the matter without a jury and on oral testimony, found that Santa Barbara had not complied with the terms of the agreement between the parties and decreed: (a) that the lease agreement be declared null and void, (b) that the Corporation was not entitled to recover on a *quantum meruit* basis and (c) that the Foundation recover of the Corporation the sum of $1,084.20 which represented the initial payment made by the Foundation to Santa Barbara.

Santa Barbara has appealed from the Decree of the Chancellor and has basically made two Assignments of Error. The first Assignment of Error has seven subsections all of which are addressed to alleged specific errors of fact. We will treat the first Assignment or grouping of Error as an Assignment to the effect that the evidence preponderates against the finding of the Chancellor. The second Assignment of Error also has seven subsec-

tions, all of which are addressed to alleged errors of law. We will consider all subsections of the Assignment in the course of this opinion, but not necessarily individually or in the order or manner of listing by the appellant.

The interrelationship of certain corporations must be first detailed for an understanding of this matter.

Mr. C. W. Caldwell, is the President, station manager and principal officer of the Foundation. Mr. Caldwell also occupies the same status with a corporation known as Southern Keswick, Inc. of St. Petersburg, Florida. Both of these corporate entities are nonprofit religious corporations engaged in non-commercial religious type radio broadcasting primarily. The Foundation operates a radio station in Chattanooga, Tennessee known by the call letters of *WKES*. Southern Keswick operates a radio station in St. Petersburg, Florida with the call letters of *WGNB*.

Santa Barbara is one of the many subsidiaries or branches of a cephalopod type corporate structure. It is our understanding from the record that Applied Magnetics Corporation serves, so to speak, as the central nervous system from which is controlled a corporation known as Schafer Electronics and also Santa Barbara Capital Corporation as well as others. Schafer is in the business of designing and selling automated radio station equipment. With the use of Schafer type equipment it is contended that it is possible for a radio station to operate for many hours practically unattended. *The programs are pretaped and are automatically broadcast at preset times.* Santa Barbara furnishes the financing for sales made by Schafer. There was no question below but that an agreement made by Schafer with the defendant Foundation was binding on the complainant Santa Barbara as well.

The Chancellor found that C. W. Caldwell entered into negotiation with Schafer to design an automation system to operate radio station WGNB of St. Petersburg.

Contemporaneously with these negotiations, were had discussions or negotiations concerning the designing of automation equipment for radio station WKES in Chattanooga, Tennessee. Caldwell being an officer of Keswick (WGNB–Fla.) as well as an officer of the Foundation (WKES–Tenn.) acted as a procuring agent for both corporations during his negotiations with Schafer Electronics.

The Chancellor found Schafer agreed to furnish automation systems for both radio stations which would be compatible, i. e., tapes, program logs etc. and equipment would be interchangeable. Although two separate orders were signed and at different times, the Chancellor found that both orders were based on written conditions precedent attached to the order for the St. Petersburg equipment.

In February 1969, Caldwell gave the first order to Schafer for the construction of an automated system for the Florida station. To this order was attached a list of conditions to be met by Schafer. This list of conditions that Schafer agreed to meet was typed by its salesman. These conditions, found to have been agreed upon by the Chancellor, basically provided that the system furnished to the Florida station would be compatible with the system to be furnished to the Chattanooga station; that the systems would perform virtually unattended and if the equipment failed to function properly in either location, both systems could be returned to Schafer. Other conditions were found to have been made by the Chancellor but the foregoing are a sufficient listing for the purposes of this opinion.

The Chancellor further found that the Chattanooga station experienced difficulties with the system from the time of its installation and that it failed to function according to the agreed upon conditions and that such failure was a substantial failure on the part of Schafer to perform the conditions precedent to the leasing agreement.

In the second Assignment of Error appellant strongly insists that the Chancellor erred as a matter of law in allowing parol evidence to prove the conditions precedent. Since the Chancellor's Decree was predicated on the finding of the existence of the conditions and their breach by the Corporation, we think this issue should be dealt with first.

The written conditions precedent were never introduced in evidence as they could not be found. Caldwell testified to their existence and from memory testified as to the contents of the writing. The salesman for Schafer at the time the agreement was made and who typed the conditions attached to the agreement also testified as to the existence of the conditions precedent and the contents of the writing. The salesman's testimony corroborated Caldwell's testimony. The salesman further testified that he had seen the written conditions in the file of Schafer. The salesman, at the time of trial, was no longer employed by Schafer. The Corporation denied any knowledge of the conditions precedent.

It is the argument of the appellant that all of this line of testimony should have been excluded and not considered by the Chancellor, as evidence of agreements between the parties entered into prior to the execution of a written agreement cannot be introduced if such evidence contradicts or is inconsistent with the terms of the written agreement.

■ The general rule on the subject of parol evidence is that such evidence is not admissible to vary or contradict a written instrument. Brown v. Brown (1958 M.S.), 45 Tenn.App. 78, 320 S.W.2d 721.

However, as noted by Mr. Justice Burnett in Early v. Street (1951), 192 Tenn. 463, 241 S.W.2d 531, there are many cases on this general subject; some stating the rule, and others the exceptions to the rule, but whether the rule or an exception is applied will depend upon the facts of each case. The case of Early v. Street involved a deed to real estate and by parol evidence it was proved that there was a separate agreement made in regard to financing the sale; a separate agreement in regard to repairs and improvements to be made and a separate agreement as to an option given to the purchaser to rescind. Under those conditions it was the holding of the Supreme Court that where the parties, contemporaneously with or prior to the execution of the written instrument, entered into distinct collateral agreements, parol proof of such collateral agreements would be allowed so long as such evidence is not inconsistent with, and does not contradict, the written instrument. In the Early case the Court applied the exception to the rule.

In the case of Crotzer v. Shawl (1927 M.S.), 5 Tenn.App. 240, the Court stated:

"Another general (exception to the) rule is that parol evidence is admissible to show conditions relating to the delivery or taking effect of the instrument, as that it shall only become effective upon certain conditions or contingencies, *for this is not an oral contradiction or violation of the written instrument but goes to the very existence of the contract and tends to show that no valid and effective contract ever existed.*" (emphasis supplied)

However, in the Crotzer case, the Court disallowed the parol evidence, but such disallowance was based on the fact that the testimony showed that the parties considered the lease agreement involved in the case to have become operative and effective after its execution. Such being true, the proof affirmatively showed that a valid and effective contract existed and such could not be varied by parol evidence.

■ In the instant case it is the position of the Foundation that its agreement with Schafer (and consequently with Santa Barbara) was that certain conditions were to be met by Schafer, that is Schafer was to design and furnish a satisfactory workable automated radio station system or there

was no deal. The separate agreement sought to be proved in the instant case by parol evidence is almost identical to the agreement(s) that was proved in Early v. Street, supra. Further, it was the testimony of Caldwell and other Foundation witnesses that it was agreed that the lease agreement with the Corporation would only become operative when the agreed upon conditions had been met by the Corporation. This oral testimony regarding the conditional nature of the lease agreement is also supported by certain written evidence which will be later discussed under another heading.

Therefore, under the authority of the Early case, supra, and under the reasoning of the Crotzer case, supra, we hold that the Chancellor did not err in allowing and considering the parol evidence.

Under its first Assignment of Error addressed to alleged errors of fact by the Chancellor, appellant contends that the Court erred in finding that the execution of a document dated December 22, 1969, by Caldwell acknowledging satisfaction with the equipment was not binding. The proof shows that on the approximate delivery date of the equipment, August 6, 1969, to the Chattanooga station, agents for Schafer attempted to obtain Caldwell's signature on a letter addressed to the Corporation which contained one paragraph as follows:

"The Schafer System listed on the Santa Barbara Capital Corporation Lease Equipment Schedule Number—has been delivered in acceptable condition. The equipment is functioning in accordance with the manufacturer's specifications and recommendations, and to our satisfaction."

Caldwell struck the words "in accordance with the manufacturer's specifications and recommendations, and to our satisfaction" before signing. No doubt this letter was sought to be obtained because Section V(d) of the lease agreement provides in part as follows:

"In all cases where installation of a Unit has been supervised by one of manufacturer's Service Engineers, Lessor (Santa Barbara) warrants that at the time of such installation, the Unit met or surpassed then current performance specifications established by manufacturer."

On December 22, 1969, Caldwell did sign a letter prepared by Santa Barbara addressed to Santa Barbara which provided as follows:

"The Schafer system, or additions thereto, listed on the Santa Barbara Capital Corporation Equipment Schedule number *S–058* or Addendum number —— has been delivered in acceptable condition. The equipment is functioning in accordance with the manufacturer's recommendations and specifications and to our satisfaction.

*The term of the lease or conditional sale will begin on this date of acceptance and continue for a total of 60 payments until termination of the contract.* We understand that our first monthly payment will begin next month on the same day as the above acceptance date." (emphasis ours)

The circumstances surrounding the signing of the letter of December 22, 1969, were testified to be that Caldwell signed the instrument while at the Florida station. Also, Caldwell and the agent for Santa Barbara both knew that the Chattanooga station was not functioning properly and that Schafer was at that time in the process of repairing same. Further, that at the time the letter was signed, Santa Barbara or Schafer was threatening to refuse to attempt to repair the malfunctioning equipment and to replevin the equipment immediately and put the Foundation off the air in Chattanooga. Caldwell further testified that he signed the letter on the agreed upon condition that the agent for Santa Barbara would first confirm with Caldwell's maintenance engineer in Chattanooga that the equipment then being repaired was working satisfactorily. Further, that

the December 22, 1969, letter was actually post dated with the understanding that the letter would not be delivered to the Santa Barbara office until the Santa Barbara agent visited Chattanooga and saw to it that the equipment was operating to the satisfaction of Caldwell's Chattanooga engineer. Upon approval by the Chattanooga engineer Caldwell would authorize the release of the December 22, 1969, letter. Caldwell and his engineer both testified that the letter was forwarded to the Santa Barbara office without their approval. The agent for Santa Barbara testified that he went to Chattanooga and obtained the engineer's approval before forwarding the letter to Santa Barbara. On January 6, 1970, Caldwell in writing repudiated the letter of December 22, 1969. It is uncontradicted that no demand for lease payment was made by Santa Barbara until after December 22, 1969, although the lease agreement called for payments to commence one (1) month after delivery.

■ We hold the Chancellor was not in error in considering all the circumstances surrounding the execution of the December 22, 1969, letter. Further, in our opinion, the existence and content of and the requirement that the letter be signed by Caldwell, in our opinion substantiates the position of the Foundation regarding the necessity of compliance with conditions precedent before the lease agreement would be binding.

■ There is ample evidence in this record to sustain all the factual findings of the Chancellor. This matter has arrived in this Court with a presumption of the correctness of those findings. T.C.A. 27–303. The evidence does not preponderate against them. Therefore, we concur in his finding and overrule appellant's first Assignment of Error and all subsections thereof dealing with issues of fact.

The first, second and fifth subsections of the Assignment of Error directed to alleged errors of law by the Chancellor have been answered by our treatment of the parol evidence rule as applicable to this case.

■ The third subsection of the Assignment dealing with alleged errors of law, faults the Chancellor for failing to find that appellant had substantially performed its contract with the Foundation and for failing to award damages to appellant. This complaint is more in the nature of an issue of fact rather than law. The Chancellor found that the very reason the equipment was purchased by the Foundation was to have a radio station that would practically self operate and be compatible with the St. Petersburg station. The Chancellor further found that the equipment continually failed to perform its intended function. The proof does not preponderate against such findings. Therefore, if the equipment failed to perform its basic function there can be no substantial performance and no damages. This subsection is overruled.

The remaining subsections of Assignment of Error II are all directed to the Chancellor's failure to award damages to appellant on the theory of breach of lease, *quantum meruit* or on appellant's theory that as a matter of law a replevin cannot be sustained without the award of damages.

■ We hold there can be no recovery for damages on the theory of breach of contract by the party who himself breached the contract. We further hold that even where the right to possession of goods is found in favor of a plaintiff (which right was not contested but admitted by the defendant in this case), the plaintiff is not entitled to be reimbursed for damages arising out of loss of use of the goods when the plaintiff by his own breach of an agreement is the cause of his own loss. As to the right of recovery under the *quantum meruit* theory; the Chancellor found that the order for the equipment was conditioned upon an agreement that if the equipment failed to perform as

Schafer represented it would perform, then the equipment could be returned at no cost to the Foundation. Since the evidence preponderates that such was the agreement we find no error in the Chancellor failing to award Santa Barbara damages under a *quantum meruit* theory.

All Assignments of Error and subsections therefore are overruled and the Decree of the Chancellor is in all things affirmed.

The cause is remanded to the Chancery Court of Hamilton County for enforcement of the Decree.

Cost of appeal is adjudged against appellant and the surety on its bond.

CARNEY, P. J., and MATHERNE, J., concur.