**Anne Simonton STARNES,**
**Plaintiff-Appellee,**

v.

**FIRST AMERICAN NATIONAL BANK OF JACKSON, Tennessee,**
**Defendant-Appellant.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

July 14, 1986.

Permission to Appeal Denied by
Supreme Court Nov. 24, 1986.

J. Houston Gordon, T.D. Forrester, Covington, for plaintiff-appellee.

Edwin E. Wallis, Jr., Jackson, Robert J. Walker, E. Clifton Knowles, Nashville, for defendant-appellant.

CRAWFORD, Judge.

This case arises from a loan transaction between the parties involving the purchase and renovation of the Lindo Hotel in Covington, Tennessee, and the installation of a "Katie's Kitchen" restaurant in said building. Plaintiff Anne Simonton Starnes' (hereinafter Starnes or plaintiff) filed an amended complaint alleging *inter alia* that defendant First American National Bank (hereinafter bank or defendant) breached its commitment to lend $300,000 to her and seeking monetary damages for loss of investment, loss of profits and conversion. Defendant answered denying the agreement as alleged and denying any breach of the commitment and, by counter-complaint, sought to recover the balance due on the promissory note executed by plaintiff. The case was tried before a jury on special interrogatories which resulted in plaintiff being awarded $360,000 for loss of investment and $111,000 for loss of profits on which the court entered judgment. Without objection, defendant was awarded judgment for $199,099 on its counter-claim for the balance due on the promissory note, which amount was ordered set off against plaintiff's judgment. Defendant has appealed and presents five issues for review which we quote:

1. Whether there was sufficient competent evidence to support the jury verdict, whether the verdict was contrary to the weight and preponderance of the evidence, and whether Defendant's Motion for directed verdict should have been granted?

2. Whether Plaintiff should have been allowed to recover "loss of investment," because "loss of investment" is not a proper measure of damages, and the proof showed Plaintiff did not suffer any loss of equity?

3. Whether Plaintiff should have been allowed to recover loss of profits, because her business was new, with no history of profitability, and the evidence introduced showed that such damages were remote, speculative and improbable?

4. Whether Defendant's proffered testimony should have been allowed to establish facts and circumstances that surrounded the making of the loan, the conditions of the loan, and subsequent modifications of the loan, all of which was not in violation of the parol evidence rule?

5. Whether Plaintiff's expert was improperly allowed to answer two hypothetical questions which omitted critical facts, mixed hypothetical facts and facts within the knowledge of the witness, and contained information that had not properly been given by Plaintiff in supplement to her interrogatory answers?

Starnes purchased the Lindo Hotel, a historic building on the square in Covington in September, 1983, for $40,000 and began renovating the hotel on December 5, 1983, using personal funds. Starnes planned to use the first floor for a "Katie's Kitchen" restaurant and at some future time planned to renovate the second and third stories of the hotel for banquet rooms, antique shops, condominiums and/or apartments. On approximately December 19, 1983, plaintiff contacted defendant about borrowing $300,000 for the renovation of the outside of the hotel and placing the restaurant on the first floor. She provided certain financial information to the bank, including business projections for the restaurant. There was some discussion about applying for a Small Business Administration (SBA) loan and plaintiff signed an application seeking a $300,000 SBA loan. On January 25, 1984, the bank's loan committee approved Starnes' request for a $300,000 loan and agreed that the loan would be extended, even without the SBA guaranty, on a year-to-year basis. On February 10, 1984, plaintiff executed a promissory note in the sum of $300,000 payable to the order of defendant and due six months from date and executed a deed of trust which refers to two promissory notes: (1) the promissory note mentioned above and (2) a promissory note in the amount of $300,000 due with some unstated interest and with a maturity date of not more than 15 years and six months. On February 10, 1984, the promissory note was secured by collateral valued in excess of $600,000 consisting of the plaintiff's home in Bartlett, Tennessee, the Hotel Lindo, a note receivable, a $300,000 insurance policy and commercial property located in Jackson, Tennessee, owned by plaintiff's ex-husband, Vearl Starnes. Plaintiff also paid a 1% loan fee of $3,000. The deed of trust was duly recorded in the Register's Office of the appropriate counties. In response to a question from the Tipton County Register regarding the amount of indebtedness for state transfer tax purposes, the bank provided a statement that said, "The total principal indebtedness on this deed of trust is $300,000. Note One is for the construction loan and is due in 180 days. Note Two is for the permanent financing after the construction is completed."

By the latter part of February, 1984, plaintiff had decided to increase the scope of the renovations to include the second floor and did so, knowing the costs would increase. Plaintiff contends that defendant knew of the additional renovations. Plaintiff testified that in late March, 1984, she telephoned the bank seeking a draw on the construction loan and was informed that she had no more money, even though only $235,000 had been advanced; that she went to see the bank's loan officer, Scherry Priddy and was told the loan was for only $250,000; that she informed Scherry Priddy she would be ruined if she did not get the money; and that the bank would not loan her anymore money. Defendant's proof showed that on approximately April 1, 1984, Scherry Priddy inspected the project, saw that there was still much work to be done, advised plaintiff that the renovation loan was for only $250,000 and informed plaintiff that the remaining $15,000 could only be drawn once the project was completed.

Later in April, Starnes sold her house in Bartlett, Tennessee, for $98,000. The check was made out to defendant and defendant released $50,000 to plaintiff and applied $48,000 on the February 10, 1984, promissory note. The bank contends, and plaintiff denies, that plaintiff told the bank

that she could cover all of her expenses if the bank would release the $50,000. Scherry Priddy also testified the bank had released the $50,000 from the sale of the house in lieu of the $50,000 on the loan. On May 1, 1984, the bank received $28,000 on the note receivable it was holding as collateral and applied it on the February 10, 1984, promissory note and would not release the $28,000 to plaintiff even though she requested it. At this point in time the principal balance due on the February 10, 1984, promissory note was approximately $160,000 plus accrued interest. On May 11, 1984, Tom Badgett, plaintiff's CPA, talked to the bank about advancing plaintiff the other money due her and informed the bank that unless plaintiff received this money, there would be no way she could complete the work, since she had already invested all of her personal funds into the project. The bank informed Mr. Badgett that no more money would be advanced until the job was completed at which time the remaining $15,000 would be advanced. Plaintiff unsuccessfully tried to find other investors. She was refused a loan by Second National Bank in Jackson, and did not seek money elsewhere because defendant had all of her collateral and she had invested all of her personal funds. On May 21, 1984, Starnes opened "Katie's Kitchen" in an effort to create a cash flow and filed her initial complaint for specific performance and monetary damages against the bank. Plaintiff sold her automobile and her daughter's automobile during this period in an attempt to hold off contractors until she could obtain additional funds. The business was growing until the first contractor's lien was filed on the hotel on June 29, 1984, when the volume of business began to decrease. After remaining open for 52 days and being unable to obtain additional funding elsewhere, Starnes closed the restaurant on July 12, 1984.

The total amount of construction financing provided by the bank to Starnes was $235,000, which had been reduced to approximately $160,000 and the bank provided no permanent financing to Starnes. Scherry Priddy testified that no permanent financing was provided because some of the collateral on which the construction loan was based had been released and because the bank had lost confidence in Starnes. At the time of trial, contractors had filed liens totaling $190,513.59 against the hotel which had not been discharged, but apparently there had been no foreclosure on the hotel and plaintiff still owned the hotel.

For the reasons hereinafter evident, we will consider defendant's fourth issue first.

4. Whether Defendant's proffered testimony should have been allowed to establish facts and circumstances that surrounded the making of the loan, the conditions of the loan, and subsequent modifications of the loan, all of which was not in violation of the parol evidence rule?

Plaintiff contends that the entire agreement of the parties was embraced within the provisions of the promissory note and the trust deed securing it. Defendant asserts, however, that the note and trust deed merely evidence the debt and do not constitute the commitment to lend which defendant allegedly breached. Defendant contends that its agreement to make the loans to plaintiff was a separate oral agreement and was not intended to be merged into the promissory note and trust deed. Defendant sought to introduce into evidence proof concerning its agreement with plaintiff and after the court sustained plaintiff's objection thereto, defendant made an offer of proof which by agreement was narrated by defendant's counsel as follows:

If the Court please, the defendant makes an offer of proof through this witness that if she had been permitted to testify in front of the jury on certain subjects, she ... would have testified that the note and the deed of trust here do not constitute the commitment of the bank to make the loan. They are only evidence of the debt and a security instrument. And that there was a commitment of the bank to make the loan to this lady, and it was oral between Ms. Priddy and Ms. Starnes at the time she got the informa-

tion back from the loan committee and agreed with Ms. Starnes to make the loan, and that that oral commitment was the commitment to loan funds.

She would testify that an essential ingredient of that commitment was that the SBA guaranty be obtained to secure a portion of this permanent loan and the construction loan.

She would testify about the circumstances surrounding the making of that commitment, including her conversations with Ms. Starnes in December and in January, December 1983 and January 1984, regarding such things as Ms. Starnes' agreement to liquidate certain of her collateral, including the house at Bartlett, and to apply the entire amount of those proceeds to reduce this loan and her agreement that if she sold other collateral or as she collected payments on that note that was due her on the K.F.C., she would apply those proceeds to pay this loan.

And those would be the things that Ms. Priddy would testify about if she had been permitted to do so, if the Court please. That would have been offered on the subject of proving, number one, a commitment to lend funds that was oral between these people; number two, the circumstances surrounding the making of this loan, all of which we submit ought to be admissible and does not violate the parol evidence rule. And let me ask my lawyer if I've left anything out.

All right. And she would testify that at the time the application was submitted to the SBA the SBA required that additional collateral in the form of the C.D.'s that her parents had pledged at the savings bank at Brighton be put down as further collateral on this loan, and that Ms. Starnes was not agreeable to that, and that is why the loan amount was reduced from $300,000 to $250,000....

And I would make a further offer of proof that she would testify that the bank would have taken it for only $250,-000 and only a year-to-year basis.

Defendant also contends that the court erred in restricting its cross-examination of plaintiff concerning the real agreement between the parties. Defendant was allowed to conduct the cross-examination out of the presence of the jury.

Parol evidence is not admissible to contradict or vary the terms of a written agreement. *Maddox v. Webb Const. Co.,* 562 S.W.2d 198 (Tenn.1978); *Santa Barbara Capital Corporation v. World Christian Radio Foundation, Inc.,* 491 S.W.2d 852 (Tenn.App.1972). Parol evidence is admissible, however, to prove the existence of an independent collateral agreement. *Early v. Street,* 192 Tenn. 463, 241 S.W.2d 531 (1951). The facts of each case must control the application of, and the exceptions to, the parol evidence rule. *Id.* In *Early v. Street,* our Supreme Court said:

> When is the Court to determine whether the alleged oral agreement is separate and distinct from or collateral to the deed? In answering this question it seems to us that the authors of A.L.R. have given a very practical and satisfactory answer when they say that the "test for determining whether the alleged oral agreement is distinct and separate from the contract evidenced by the writing, so as to permit proof thereof by parol or extrinsic evidence not inconsistent with or contradictory to the writing, is whether the oral agreement is one which, considering the circumstances of the parties, the subject-matter, and the nature of the writing, would ordinarily have been embodied in the written instrument, had the parties intended that they should be bound thereby." 70 A.L.R. 759.

*Id.* at 472–73; 241 S.W.2d at 535.

From our examination of the promissory note and trust deed we deduce that it was not intended to be, nor does it purport to be, a commitment to lend money. The note evidences an indebtedness, all of which admittedly was not advanced, although plaintiff in the promissory note acknowledged value received. Neither the promissory note nor the trust deed securing it purport to include any terms and

provisions concerning: the advancement of money commensurate with the construction involved; the disposition of collateral for the loan; or the actual mechanics of providing the construction funds. It is obvious to this Court that the commitment to lend or the agreement between the parties concerning the loan was a separate collateral agreement and it was never intended that the terms and provisions concerning the loan agreement would be merged in the promissory note and trust deed evidencing the indebtedness and the security therefor.

The terms of a written agreement may be supplemented by evidence of additional terms unless it is found that the writing was intended as an exclusive statement of the terms of the agreement. *See Strickland v. City of Lawrenceburg,* 611 S.W.2d 832 (Tenn.App.1980); *Kilday v. Baskette,* 36 Tenn.App. 479, 259 S.W.2d 162 (1953). Certainly the parol evidence rule does not forbid the introduction of evidence of an agreement made subsequent to the execution of the writing, although the effect of the subsequent agreement might add to, change, modify or abrogate the contract as evidenced by the writing. *See Brunson v. Gladish,* 174 Tenn. 309, 125 S.W.2d 144 (1939).

In this case, the trial court should have admitted evidence of the agreement between the parties concerning the SBA application, the allocation of the proposed loan to the purchase price of the property and the construction expense, and all other terms of the loan agreement, including the disposition of collateral and application of the proceeds therefrom. In our opinion, the exclusion of this evidence affected the judgment as required by T.R.A.P. 36(b). Without proof of the underlying agreement, the fact finder could not determine a breach of the agreement nor the damages resulting from the breach. Accordingly, the judgment of the trial court must be reversed and this case remanded for trial.

Since the case is to be retried, we will comment briefly on other issues presented insofar as they might be involved in the re-trial.

Defendant asserts in Issue No. 2 that "loss of investment" is not a proper measure of damages. In interrogatories submitted to the jury, the trial court used the term "loss of investment;" however, the instructions to the jury concerning the rules for determining damages did not use the term "loss of investment." In essence, the jury was instructed that the plaintiff was entitled to recover those damages proximately resulting from the breach. The court stated, "You're instructed that the measure of damages for breach of any contract is that which was reasonably contemplated by the parties. The general principle for the assessment of damages for breach of contract is that the plaintiff is entitled to be placed, so far as can be done by money, in the same position he would have been in if the contract had been performed."

Defendant asserts that there is no cause of action for "loss of investment." Technically speaking we could agree with defendant's assertion, but we do not agree with defendant's contention that there cannot be a recovery for loss of investment. If loss of investment naturally and proximately follows the breach of the contract and was in contemplation of the parties, this is an element of damages for which an award can be made. *See Farabee-Treadwell Co. v. Bank & Trust Co.,* 135 Tenn. 208, 186 S.W. 92 (1916). Defendant mistakenly equates an element of damage with a cause of action. In the case at bar, the record reflects that the bank knew that the purpose of the loan was for plaintiff to establish a going concern in the historic Lindo Hotel. The value of the investment is the value of a going concern in such a location and certainly this could be within the contemplation of the parties at the time the loan was made. If the breach of the contract to lend money caused a loss of the investment under these circumstances, it would be an element of damages to be considered for the breach. Upon retrial the jury interrogatory should call for a

determination of damages occasioned by the breach of the agreement after instruction from the court as to the proper elements of damages.

■ Defendant also complains about the award of damages for loss of profits. Since the proof on retrial may not be the same as the proof before us presently, we will do no more than comment that loss of profits is recognized as an item of damages depending on the nature and extent of proof involved. *See Jennings v. Lamb,* 201 Tenn. 1, 296 S.W.2d 828 (1956); *Ferrell v. Elrod,* 63 Tenn.App. 129, 469 S.W.2d 678 (1971). *But see Burge Ice Machine Company v. Strother,* 197 Tenn. 391, 273 S.W.2d 479 (1954).

Defendant also complains about the hypothetical questions asked of plaintiff's expert witness. We will not comment on this because the propriety of the questions will depend upon the evidence introduced at the subsequent trial.

For the reasons stated, we reverse the trial court's judgment and remand this case for trial consistent with this opinion. Costs are assessed against the appellee.

Although on this occasion we did not specifically enforce Rule 14 of the Tennessee Court of Appeals Rules concerning the abridgement of the record, we recommend that counsel consult said rule in future appeals to this Court.

HIGHERS, J., and McLEMORE, Special Judge, concur.