IN THE COURT OF APPEALS OF TENNESSEE

FILED

MAY 29, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | |
|---|---|
| NATIONSBANK OF TENNESSEE, | ) C/A NO. 03A01-9607-CH-00226 |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) APPEAL AS OF RIGHT FROM THE |
| | ) KNOX COUNTY CHANCERY COURT |
| v. | ) |
| | ) |
| | ) |
| JDRC CORPORATION, a/k/a JDRC | ) |
| DEVELOPMENT CORPORATION and | ) |
| BERNARD ARMSTRONG, | ) |
| | ) HONORABLE SHARON BELL, |
| Defendants-Appellants. | ) CHANCELLOR |


For Appellants:

DAVID L. BACON
Knoxville, Tennessee

For Appellee:

DEAN B. FARMER
W. TYLER CHASTAIN
Hodges, Doughty & Carson, PLLC
Knoxville, Tennessee


O P I N I O N


VACATED AND REMANDED                    Susano, J.

NationsBank of Tennessee ("the Bank")[1] sued the defendants[2] JDRC Corporation (JDRC) and Bernard Armstrong (Armstrong) to recover on two notes executed by JDRC and personally guaranteed by Armstrong, JDRC's president. JDRC and Armstrong filed a counterclaim for damages alleging that the Bank had "breach[ed]... the financing agreement between the parties and... the implied obligation of good faith." The trial court granted the Bank summary judgment on its original complaint. The issue of liability having been found adverse to the defendants, the parties agreed that the amount due on the notes was $1,000,000. The trial court also found that the Bank was entitled to summary judgment on the counterclaim, and accordingly dismissed that action. JDRC and Armstrong appealed[3] the dismissal of their counterclaim. The only issue before us is whether there are disputed facts that render summary judgment on the counterclaim inappropriate.

I. *Facts*

The facts, when construed in favor of the defendants, are as follows. In order to finance the development and construction of a 216-unit condominium project called Marble Hill Condominiums, JDRC obtained two $500,000 loans from the Bank. The proceeds of the first loan were to be used for the initial

[1]This action was originally filed by Sovran Bank/Tennessee. That entity subsequently merged with NationsBank of Tennessee. The latter was then substituted as party plaintiff.

[2]Numerous other entities and individuals were named as defendants in an effort to clear the title to this condominium project. Their identity and the suits against them are not material to this appeal.

[3]The notice of appeal recites that the appellants appeal "as to the dismissal of their [counterclaim] *only*." (Emphasis added).

2

development of the project site, while the proceeds of the second loan were to be utilized for construction of the condominium units. As consideration for the loans, JDRC executed two $500,000 promissory notes. The first note was executed on January 29, 1988, and renewed for one year on January 29, 1989; the second was executed on October 19, 1988, and renewed for an additional year on October 27, 1989. Each obligation was secured by a separate deed of trust on the condominium property. Interest was due quarterly. Armstrong personally guaranteed both obligations.

In his deposition, Armstrong testified that he reached an oral agreement with Richard Hayes and T.K. Wright of the Bank regarding lot releases, whereby the Bank would receive $30,000 upon the closing of the sale of each condominium unit. From that amount, $10,000 was to be applied toward the first loan, and $20,000 toward the second loan. When a lot/unit was sold and closed, the Bank agreed to release the deed of trust as to that lot in return for the agreed-upon payment. JDRC was thus entitled to any amount over $30,000 from each sale. Generally speaking, the purchase price of the units was between $40,000 and $60,000. JDRC depended on this income for working capital to finish out the units being sold and to build more units.

According to Armstrong, the parties operated under this arrangement until late 1989, when John Burke of the Bank informed him that JDRC would henceforth be required to pay the Bank 100% of the proceeds from future closings. Burke gave no reason for the change but stated that the decision was final. Armstrong's subsequent efforts to discuss the matter with officials of the Bank

3

were unsuccessful.

At the time the Bank demanded full payment of all net sale proceeds, JDRC was preparing to close the sale of three of the newly-constructed condominiums. According to Armstrong, this change in repayment policy left JDRC with no working capital. JDRC was thus unable to close the three sales--or any subsequent sales--and was forced to abandon the project and cease doing business. The Bank declared JDRC in default in March, 1990, and filed its complaint on the notes in June of the following year.

In its counterclaim, JDRC alleges that the Bank breached the financing agreement between the parties and its implied obligation of good faith. JDRC contends that such acts proximately caused the loss of condominium sales, lost profits, and other damages.

## II. *Summary Judgment*

The trial court's grant of summary judgment causes us to focus on the rules that are applicable when a defendant, counter-defendant, or other defending party, seeks to avoid a plenary proceeding by moving for summary judgment.

When a party responds to a claim against it by filing a summary judgment motion, it is incumbent upon that party to support its motion with facts that establish an affirmative defense, negate at least one of the essential elements of the claim, or otherwise show that the claimant is not entitled to relief. ***Byrd v. Hall***, 847 S.W.2d 208, 213-14, 215 n.5 (Tenn.

4

1993).  Typically, these facts are presented in the form of affidavits, authenticated documents, depositions, and other properly-verified factual matters developed through the discovery process.  *See* Rule 56.03, Tenn.R.Civ.P.  The proffered sworn-to testimony and/or properly-authenticated documents must be admissible at trial before they can be considered by the trial court on summary judgment.  **Byrd**, 847 S.W.2d at 215.  However, they need not be in admissible form; hence, an affidavit, while not admissible at trial in that form, can be considered by the court if the testimony itself is otherwise admissible.  *Id*. at 215-16.

If the material relied upon by the defending party unwittingly or otherwise demonstrates *disputed* material facts; or reflects undisputed material facts, but fails to show that the movant is entitled to a judgment, then, in either event, the nonmovant is not required to do anything to defeat summary judgment.  *Id*. at 211.  The burden to satisfy the requirements of Rule 56.03, Tenn.R.Civ.P., is clearly on the defending party.  *Id*. at 215.  That party does not satisfy its burden by making *conclusory* assertions that the claimant cannot prove its claim. *Id*.  If, on the other hand, the material relied upon by the defending party demonstrates undisputed material facts supporting a judgment for that party, the nonmoving party must respond by putting admissible facts before the trial court to show a dispute as to those material facts in order to defeat summary judgment. *Id*.  The nonmovant cannot, in that case, simply rely upon the allegations of its claim.  *See* Rule 56.05, Tenn.R.Civ.P.

5

The nonmovant is entitled to the benefit of any doubt. *Byrd,* 847 S.W.2d at 211. The trial court must "take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Id*. at 210-11. All facts supporting the position of the nonmovant must be accepted as true by the trial court. *Id*. at 212. It is only when the material facts are not in dispute and conclusively show that the movant is entitled to a judgment, that a trial court is justified in depriving a claimant of its right to a plenary trial. In all other instances, a trial on the merits is necessary. Summary judgment "is clearly not designed to serve as a substitute for the trial of genuine and material factual matters." *Id*. at 210.

A request for summary judgment raises a question of law. *Gonzales v. Alman Const. Co*., 857 S.W.2d 42, 44 (Tenn.App. 1993). Our perspective is the same as that of the trial court. *Id*. at 44-45. Therefore, we must decide anew if the movant is entitled to summary judgment. *Id*. Since this determination involves a question of law, there is no presumption of correctness as to the trial court's judgment. *Id*. at 44.

III. *Law and Analysis*

On the day the trial court heard the Bank's motion for summary judgment, the Bank filed with the trial court two documents from its records as late-filed exhibits to the

6

deposition of its loan officer, Richard Hayes.[4]  The first of these documents is entitled "Commercial Loan Memorandum," (see Apendix No. 1).  It is dated January 4, 1988, a short time before the execution of the first note.  In his deposition, Hayes described the document as a "write-up," apparently of the Bank's loan to JDRC.  It is approved and signed by the members of the Bank's loan committee.  The second bank document is dated October 19, 1988, the date on which the second $500,000 note was executed by the defendants.  It is entitled "New Loan Summary," (see Appendix No. 2).  It contains no signatures.

Prior to the filing of these two documents, the Bank had argued to the trial court that the defendants' counterclaim, at best, was based on an oral promise or commitment and was therefore unenforceable under the Statute of Frauds, T.C.A. § 29-2-101(b)(1), which provides that

> [n]o action shall be brought against a lender or creditor upon any promise or commitment to lend money or to extend credit, or upon any promise or commitment to alter, amend, renew, extend or otherwise modify or supplement any written promise, agreement or commitment to lend money or extend credit, unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the lender or creditor, or some other person by him thereunto lawfully authorized.

Once the aforesaid documents were produced, the Bank's argument

---

[4]The deponent Hayes identified the document as a "one-page cover sheet." However, when filed with the trial court on November 2, 1995, the "one-page" document had *two* pages that were stapled together--the Commercial Loan Memorandum and the New Loan Summary.  In view of the fact that the two pages have different dates reflecting a significant lapse of time, i.e., January 4, 1988, and October 19, 1988, they appear to be independent documents.

changed somewhat. Thereafter, and on this appeal, it argues that neither of these documents satisfies the requirements of T.C.A. § 29-2-101(b)(1). It also argues that even if the Commercial Loan Memorandum is sufficient to satisfy the "in writing" requirement of T.C.A. § 29-2-101(b)(1), it is inadmissible since, so the argument goes, it is an attempt to modify the notes by parol evidence. The trial court concluded that the Commercial Loan Memorandum was not a "public" document and therefore could not be used to satisfy the Statute of Frauds.

At the outset, we would point out that the New Loan Summary is not signed; hence, it is clear that it cannot satisfy the Statute of Frauds, which expressly requires a document "signed by the lender or creditor or some other person by him thereunto authorized." *Id*. However, unlike the New Loan Summary, the Commercial Loan Memorandum is signed by officials of the Bank. It raises two issues: first, does the latter document satisfy all of the requirements of T.C.A. § 29-2-101(b)(1)?; and second, is this document otherwise admissible?

In this case, the Bank attacks only one element of the defendants' counterclaim, i.e., whether there was a legally enforceable promise or commitment. Therefore, the Bank's motion must rise or fall on this one issue. Since the Bank did not file a properly-supported motion as to any of the other elements of the counterclaim, the defendants, as counter-plaintiffs, were not required to present facts with respect to these other elements.

8

We will now examine the two questions posed above.

## A.  *Statute of Frauds*

The defendants' counterclaim is clearly subject to the terms of the Statute of Frauds, T.C.A. § 29-2-101(b)(1).  That statute expressly applies to an action "against a lendor or creditor... upon any promise or commitment to... supplement any written promise, agreement or commitment to lend money or extend credit...." *Id.*  In order to satisfy this provision, there must first be a promise, commitment, or agreement, "or some memorandum or note thereof." *Id.*  We believe that, at a minimum, the Commercial Loan Memorandum constitutes a "memorandum" of the Bank's commitment to release the deed of trust upon the sale of a lot, provided it receives $30,000 of the net proceeds from the sale.

The Memorandum contains the following notation: "Lot release $30,000.00."  This is consistent with Armstrong's testimony that the Bank had agreed to release each lot from the deed of trust upon payment of $30,000 of the purchase price of a lot.  Furthermore, the Memorandum states that "$250,000 of [the] first loan would be paid from sales of [the] 1st 25 units."  This figure corresponds to Hayes' testimony that the Bank applied $10,000 from each sale to the initial loan.  Therefore, when construed in a light most favorable to the defendants, as we are required to do in this summary judgment determination, the Commercial Loan Memorandum is evidence of a commitment by the Bank to release each lot upon the payment of $30,000.

9

T.C.A. § 29-2-101(b)(1) additionally requires that such promise or commitment, or "memorandum or note thereof," be in writing. It is clear that the Commercial Loan Memorandum, a written document, meets this requirement.

Finally, T.C.A. § 29-2-101(b)(1) provides that the promise, agreement or memorandum must be "signed by the lendor or creditor, or some other person by him thereunto lawfully authorized." *Id.* The Commercial Loan Memorandum is signed by "R.M. Hayes", "T.K. Wright",[5] and several others on behalf of the Bank. Accordingly, we find that the document meets the signature requirement of T.C.A. § 29-2-101(b)(1).

The trial court concluded that the Commercial Loan Memorandum could not be used to satisfy the Statute of Frauds because it was an internal bank document, whose existence was apparently not known outside the Bank. We disagree. There is nothing in the statute requiring that "the memorandum or note" of the promise or commitment be furnished to the borrower or otherwise be a public document.

We therefore conclude that the Commercial Loan Memorandum satisfies the Statute of Frauds. The notation, "Lot release $30,000.00", is not, as the Bank argues, too indefinite to form the basis of a promise or commitment. The Memorandum evidences a promise or commitment to release each lot from the

---

[5]Interestingly enough, Armstrong identified both of these bank officials as the ones who made the subject commitment. Apparently, he identified them before he was aware of the existence of the Commercial Loan Memorandum.

deed of trust upon payment of $30,000.

With regard to the New Loan Summary, on the other hand, we have previously indicated that that document--being unsigned-- does not satisfy the Statute of Frauds. While the New Loan Summary, in and of itself, cannot constitute a binding commitment, we believe it is nevertheless relevant, and hence admissible, on the issue of the lot release agreement; specifically, it contains evidence bearing upon the Commercial Loan Memorandum, a document that does satisfy the Statute of Frauds. The New Loan Summary is dated October 19, 1988 -- the same date as the second loan. It contains, on a line designated "Repayment Agreement", the handwritten notation: "lot release 20,000 per sale this loan, 10,000 per lot 1st loan." Again, these numbers correspond to Armstrong's testimony regarding the terms of the repayment arrangement: the Bank would release each lot upon receipt of $30,000 of its purchase price; it would then apply $20,000 toward repayment of the second loan, and $10,000 toward the repayment of the first loan. Thus, the New Loan Summary on the second loan provides further evidence that the Bank made a promise or commitment to release the lots from the deed of trust upon the payment of $30,000.

### B.  Admissibility of Bank Documents

The Bank argues that even if the Commercial Loan Memorandum satisfies the Statute of Frauds, it is inadmissible as an attempt to modify the promissory notes by parol evidence. We disagree. The parol evidence rule provides that

11

> parol evidence is inadmissible to contradict, vary, or alter a written contract where the written instrument is valid, complete, and unambiguous, absent fraud or mistake or any claim or allegation thereof.

*Airline Constr., Inc. v. Barr*, 807 S.W.2d 247, 259 (Tenn.App. 1990). Our courts have held, however, that parol evidence *is admissible* "to prove the existence of an independent collateral agreement." *Starnes v. First American Nat'l Bank*, 723 S.W.2d 113, 117 (Tenn.App. 1986). *See also* *Early v. Street*, 241 S.W.2d 531, 535 (Tenn. 1951) ("There are exceptions to the effect that an independent collateral agreement may be proven..."). Furthermore, as stated in *Starnes*,

> [t]he terms of a written agreement may be supplemented by evidence of additional terms unless it is found that the writing was intended as an exclusive statement of the terms of the agreement.

*Starnes*, 723 S.W.2d at 118 (citing *Strickland v. City of Lawrenceburg*, 611 S.W.2d 832 (Tenn.App. 1980); *Kilday v. Baskette*, 259 S.W.2d 162 (Tenn. 1953)).

The application of the parol evidence rule[6] and its exceptions depends upon the facts of each particular case. *Early*, 241 S.W.2d at 535; *Starnes*, 723 S.W.2d at 117.

---

[6]While the parol evidence rule typically involves an attempt to introduce evidence of an oral promise or commitment, the Bank argues that it applies to the written Commercial Loan Memorandum. In view of our disposition of this case, we do not find it necessary to decide whether the parol evidence rule applies to these written documents.

In the **Airline Construction** case, this court addressed the admissibility of evidence of an oral agreement to complete part of a construction project within six months.  After finding that the written contract specified that substantial completion was to be achieved within approximately *eight* months, the court held that the parol evidence at issue contradicted and varied the terms of the parties' contract and was therefore inadmissible. **Airline Constr.**, 807 S.W.2d at 259.  The court stated that

> [p]arol proof of "inducing representations"
> or "collateral agreements" to the written
> contract must be limited to subject matter
> which does not *contradict* or *vary terms* which
> are plainly expressed in the writing.

*Id.* (emphasis in original)(citing **Searcy v. Brandon**, 68 S.W.2d 112 (Tenn. 1934); **Litterer v. Wright**, 151 Tenn. 210, 268 S.W. 624 (Tenn. 1925); **Dupont Rayon Co. v. Roberson**, 12 Tenn.App. 261 (1930); **Seaton v. Dye**, 263 S.W.2d 544 (Tenn.App. 1954)).

In **Early v.Street**, the Supreme Court found that various oral agreements, which a buyer sought to establish by parol evidence, were independent of and collateral to a deed of sale between the parties.  The court held that such evidence was admissible and noted that

> it certainly was not the intention of the
> parties, nor did they deem it necessary to
> incorporate all of these collateral
> agreements in the deed.

**Early**, 241 S.W.2d at 535.

13

Under the facts of the instant case, we conclude that the arrangement between the parties as to the release of an individual lot from the deed of trust upon payment of $30,000 was an independent agreement, collateral to the promissory notes. *See* **Early**, 241 S.W.2d at 535; **Airline Constr.**, 807 S.W.2d at 259; and **Starnes**, 723 S.W.2d at 117-18. Therefore, such agreement may be established by evidence in the form of the Commercial Loan Memorandum and the New Loan Summary, provided such evidence does not contradict or vary terms that are clearly expressed in the notes. **Airline Constr.**, 807 S.W.2d at 259.

Upon review of the relevant documents, it is clear that the lot release agreement in no way varies or contradicts the terms of the promissory notes. Unlike the contract in the **Airline Construction** case, which included a specific provision that directly contradicted the alleged oral agreement, the notes in the instant case contain no specific provision regarding the release of the lots from the deed of trust. As previously indicated, the collateral agreement in this case did not vary or change the notes in any way--they continued to be due and payable precisely according to their terms as found within the four corners of the notes.

Furthermore, it appears that, as in the **Early** case, the parties did not deem it necessary to include every aspect of their agreement in the notes. On the contrary, it appears that the notes were not intended to be an "exclusive statement of the terms of the agreement." **Starnes,** 723 S.W.2d at 118. As a practical matter, to facilitate the sale of individual condominiums free of the underlying mortgage, there had to be some additional

14

arrangement regarding the release of the lots from the deed of trust.  The collateral agreement had the effect of addressing an obvious and

essential element otherwise missing from the parties' "deal"--the amount of the sales price of each lot that was to be paid to the bank in order to obtain a release of the deed of trust as to the individual lots.  In a multi-unit condominium project, there has to be some understanding between the borrower and lender regarding the release of the individual lots if sales are to be effected and financed.

We therefore conclude that the Commercial Loan Memorandum and the New Loan Summary are admissible evidence of an independent, collateral agreement between the parties.  Under the facts of this case, the parol evidence rule does not operate to bar their admission.  *See* **Early**, 241 S.W.2d at 535; **Airline Constr.**, 807 S.W.2d at 259; and **Starnes**, 723 S.W.2d at 117-18.

IV.  *Conclusion*

We conclude that the Commercial Loan Memorandum is sufficient to satisfy the Statute of Frauds.  Therefore, the Bank's motion fails in its attempt to negate the defendants' claim of a commitment by the Bank to release lots from the deed of trust upon the payment of $30,000 out of the net proceeds of a closing. There is admissible evidence of this commitment.  Since this was the only element of the counterclaim attacked by the motion for summary judgment, we find and hold that the Bank is not entitled to summary judgment.

16

We express no opinion as to the merits of the counterclaim.  We simply hold that the Bank is not entitled to judgment in a summary fashion.

The judgment of the trial court awarding the appellee summary judgment on the counterclaim is vacated.  This case is remanded to the trial court for further proceedings not inconsistent with this opinion.  Costs on appeal are taxed to the appellee.

_____
Charles D. Susano, Jr., J.