B. C. DURHAM, Executor of Estate of W. F. PADG-
ETT, Deceased, Plaintiff-in-Error, v. B. F. WEBB, De-
fendant-in-Error.

B. C. DURHAM, Executor of Estate of W. F. PADG-
ETT, Deceased, Plaintiff-in-Error, v. PAUL MANNER,
Defendant-in-Error.

B. C. DURHAM, Executor of Estate of W. F. PADG-
ETT, Deceased, Plaintiff-in-Error, v. WALTER ROSE,
Defendant-in-Error.—330 S. W. (2d) 355.

Western Section.   July 24, 1959.

Certiorari Denied by Supreme Court June 5, 1959.

430

B. C. Durham, Herman L. Reviere, Ripley, for plaintiff in error.

Robert S. Thomas, Ripley, for defendants in error.

TOM ELAM, Special Judge, sitting in place of CARNEY, Judge. This is an appeal by the defendant below from judgments entered against him, as Executor of the estate of Walter F. Padgett, deceased, in the County Court of Lauderdale County in the total sum of $9,000 in favor of the claimants below, each of them being awarded the sum of $3,000 upon claims filed by them individually in said court.

The suits involving each of the claims against the estate of the decedent were consolidated and adjudicated at a single hearing by consent of the parties.

These claims were filed by employees of the Ripley Box and Basket Company with the insistence that each of claimants was entitled to the sum of $3,000 as additional compensation or bonus for services performed by him for the company during the year of 1957.

The Ripley Box and Basket Company was owned by Walter F. Padgett and Broadus Klutts, who operated the same as a partnership for a number of years. Mr. Klutts died January 14, 1956 and Mr. Padgett acquired full ownership thereof after his death. According to the record, the business was extremely profitable and one of the principal complaints of Mr. Padgett was the payment of what he considered excessive income taxes to the government.

The net profit of the operation of the company for the year of 1956 was $38,000 and the net profit for 1957 was $63,000.

Each of the claimants had worked for the company for a number of years.

B. F. Webb had been superintendent for the past 10 years, Paul Manner was its salesman during that period of time and Walter M. Rose served as Secretary-Treasurer. In their claims, they alleged that they had been instrumental and responsible for the profitable operation of the company during the past three years, particularly due to the failing health of Mr. Padgett and the untimely death of Mr. Klutts. They further alleged that each of them received a bonus of $2,000 for their services in 1956, in addition to their regular pay, and that they were to receive a bonus of $3,000 for 1957.

After Mr. Padgett died on February 2, 1958, none of them had received such additional compensation. In this connection, they insisted that the reason they were not paid was due to a heavy inventory carried by the company in excess of $100,000 at the close of business in 1957 and that, accordingly, they could not be paid until the inventory, or some part thereof, had been converted into cash or liquid assets.

The Executor of the estate of Mr. Padgett excepted to the claims of these parties on the following grounds:

"1. That he had no knowledge of any promise of Walter F. Padgett to pay claimants any bonus.

"2. That before any claim against the estate is allowed, the Executor asked for strict legal proof of the same."

As indicated herein, all these matters were consolidated and heard before the County Judge upon the oral testimony of witnesses and certain records of the company, examined in open court on December 2, 1958, at which time, judgments were entered on behalf of each claimant as hereinabove recited.

As all parties consented to an appeal directly to the Court of Appeals, these matters are properly before this Court for decision. Section 27-402, T. C. A.

The only testimony offered at the trial was from the three claimants and Utley, County Court Clerk, who testified for them. The defendant introduced no proof.

B. F. Webb testified that he, Mr. Rose and Mr. Manner were promised the sum of $3,000 as a bonus for their services with the company during the year of 1957 by Mr. Padgett. He said that Mr. Padgett did not work very much, as his health was failing, and that, at one

time, witness made arrangements to go to Louisiana for a better job, but Mr. Padgett asked him to stay and promised the additional compensation if he would do so. He also made similar promises to Mr. Rose and Mr. Manner on different occasions.

He was paid a bonus of $2,000 for services in 1956.

Paul Manner testified that he had been an employee of the company for 10 years. He was paid a salary of $4,200 per annum and a bonus of $2,735.39 during 1956. In 1957, he received $4,400 as salary. After Mr. Klutts died, Mr. Padgett had a stroke and he, Webb and Rose "doubled up" to keep the business going. Mr. Padgett worked some during the year of 1956 but, as he was in failing health, he worked very little in 1957. Witness was present when Mr. Padgett promised Rose and Webb additional compensation in the sum of $3,000 for 1957. Neither he nor the others were paid their 1956 bonuses until sometime during the year of 1957. They had an inventory problem during 1956 as they did later in 1957. No extra help was employed after the death of Mr. Klutts and the disability of Mr. Padgett.

The testimony offered by Walter Rose was similar to that of his fellow employees. As he had access to the books and records of the company, he was in a position to offer certain information concerning its affairs. He was familiar with the net profit of $38,000 made by the company in 1956 and the larger profit in 1957. He heard Mr. Padgett say to his fellow employees on several occasions that they would receive bonuses in the sum of $3,000 as additional compensation for their work in 1957. After the death of Mr. Klutts, he took over the latter's duties and continued to perform his own duties, as no

additional help was employed. As bookkeeper for the company, he had knowledge of the company's records and business activities. Mr. Padgett was 78 years of age at the time of his death and Mr. Klutts was about 60. He was with Mr. Padgett when he died and looked after him to a considerable extent in 1957. He would take him from home to the office and back home for lunch and his nap, and then bring him back to the office on the company's premises. In fact, during that time, he said he took him everywhere he went.

The only disinterested witness in the lower court was N. C. Utley, Clerk of that Court, and a longtime personal friend of Mr. Padgett. As a matter of fact, the record indicates that he was one of the closest, if not the closest, friend Mr. Padgett had during his lifetime. He was a confidante of Mr. Padgett as the latter discussed his personal and domestic problems with him as well as his business transactions. Mr. Padgett discussed the matter of a bonus for each of the three claimants on several occasions and said that he intended to give them bonuses for their work during the year of 1957. Mr. Padgett told the witness that, when he had sold his inventory, he was going to "make it up to them with a bonus—57 it was." Mr. Utley was acquainted with the $2,000 bonus given to each of these employees during 1956, as Mr. Padgett had discussed that with him on several occasions. Although in failing health, Mr. Padgett was rational when he discussed these matters with Mr. Utley. Mr. Padgett did not say how much he was going to give these individuals, but he said he was going to "make up to them for what he hadn't give them and when he cleared the inventory, he was going to settle with them." He died before the inventory had been cleared.

During cross-examination of the witness by the Executor, the following information was elicited:

"Mr. Durham: Your having been a close friend of Mr. Padgett, do you think there is anything unjust and improper in the claims that these gentlemen have filed here?

"Mr. Utley: No.

"Mr. Durham: Talking with Mr. Padgett it was your understanding he was going to do it?

"Mr. Utley: He was going to do it.

"Mr. Durham: A certain amount you didn't know how much?

"Mr. Utley: I didn't know how much, but he said he was going to make it up to them.

"Mr. Durham: More than their regular salary?

"Mr. Utley: More than their regular salary? Yes Sir-e-e."

During some of his discussions with Mr. Padgett, Mr. Utley told him: "They ought to quit you—you can't run the factory without them." He further testified: "We have been mad at each other lots of times and I told B. F. (referring to Webb) when Broadus (referring to Klutts) died now is the time for you to get a decent salary. I imagine he was paying him $70.00 or $75.00 a week, and he should have been paying them $250.00 a week for the work they had been doing down there. Broadus couldn't run it without them. Padgett couldn't either. They couldn't have moved a thing if it hadn't been for these men right here."

Witness testified that "Mr. Padgett was always arguing about income tax (the records indicate that he paid the sum of $48,000 to the government during the years 1956-57) and I said * * * if you paid B. F. Webb, Walter Rose and them a decent salary, they would have gotten it and Uncle Sam wouldn't have gotten it * * * he said something about an inventory and when he sold that, he was going to make it up to them with a bonus." Some of these statements were made by Mr. Padgett "either before Xmas or right after Xmas."

In response to a question propounded by counsel for claimants "And your interpretation of that and the way you understood Mr. Padgett he was actually going to give them much more than $2,000.00?" Mr. Utley replied "Oh yes".

The executor has assigned errors as follows in this Court:

"1. The learned Judge erred in permitting the claimants who are parties to the suit to testify as to any conversation they had with the deceased as to a bonus agreement over the objection of B. C. Durham, Jr., made at the time.

"2. The learned Judge erred in ruling that the preponderance of the evidence was in favor of the claimants."

A determination of Assignment of Error No. 1 necessarily involves the application of the so-called "Dead Man's Statute" in this State to the evidence introduced in the lower court. Section 24-105, T. C. A., which is the statute referred to, provides:

"In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party * * *''

█ The record is not entirely clear as to whether proper objection was made to the testimony of the claimants in the lower court, but it appears, from a study of the entire bill of exceptions, that such was the intention of the litigants at the trial, and it will be so considered by this Court. Thompson v. Anderson, 2 Tenn. Cas. 161.

█ There is the further suggestion and insistence by claimants that their evidence should be considered on the question of the contract with decedent concerning their bonuses because of the cross-examination of them by the Executor in regard thereto. We do not think this insistence is well taken because claimants were interrogated by their counsel, over the objection of the Executor, as to such agreement, and incompetent evidence cannot be made competent in such manner. Bowlen v. Baker, 147 Tenn. 36, 245 S. W. 416.

The real question presented under this assignment of error is whether or not the statute would preclude the testimony of one of the claimants on behalf of another claimant merely because of his interest, or whether it applies only to the parties, so that if a witness be not a party, he is competent under the general provisions notwithstanding he may be interested in the result.

Although it is true, from a technical point of view, that each individual claim is by a single claimant, with none

of the others joined, realistically considered, all three claimants were parties to each individual suit as they would be parties formally to a joint suit. The three claims actually constituted a joint claim against the estate of the decedent, as all the claims are predicated upon the same series of alleged statements made by the deceased, and they must stand or fall upon the same evidence. If the contract is established as to one claimant, it is established to all. There can be no insistence that the evidence will differ among the claimants in respect to proof of the alleged agreement.

The applicable Tennessee cases recognize a distinction between parties merely in interest from those who, though technically not parties, actually are, and must be so classified. Appolonio v. Baxter, 6 Cir., 217 F. (2d) 267, 273.

■ A party cannot testify in favor of his co-party where the interest of the co-parties are joint or so connected that all must succeed or fall together. Nashville Trust Co. v. Williams, 15 Tenn. App. 445.

■ Where a witness is called to testify as to a transaction with, or a statement, by a decedent or ward in an action against an Executor, administrator or ward, the court in determining the competency of testimony under the Section 9780 of Williams Tennessee Code (now Section 24-105, T. C. A.) will consider the interest between the witness and the party calling him, regardless of the witness' technical position on the record. Tennessee Evidence, Section 176; Roy v. Sanford, 140 Tenn. 382, 204 S. W. 1159.

■ We, therefore, conclude that the Trial Court erred in permitting the introduction of evidence by the claimants relating to conversations and transactions with the decedent, and that the first Assignment of Error must be sustained to that extent and, without other evidence, the suits would fail.

■ In view of the above ruling, we think it proper to observe at this time that, although the claimants may not testify as to any transaction with or statement by the testator and the admission of such testimony is error, such error is harmless if the judgment is supported by evidence other than such incompetent evidence and there is no material evidence as to the contrary. Brown v. Fuqua, 9 Tenn. App. 22.

Executor's Assignment of Error No. 2 challenges the preponderance of the evidence in favor of the claims or, as we see it, raises the question as to whether there is any competent material evidence to sustain the judgment of the lower court. If so, the decision on the first assignment of error is neither conclusive on, nor determinative of, the issues presented herein.

Although we have denied the right of claimants to testify as to transactions with the decedent, and conversations with him, it is competent for them to testify as to other matters beyond such limitations. In this connection, the rule in this State, as annunciated by our Supreme Court, is "transactions with intestate, as to which witness cannot testify, refer to things done in intestate's presence, to which he might testify of his own personal knowledge, if alive, not to transactions out of his hearing and presence, although affecting liability of his estate." Newman v. Tipton, 191 Tenn. 461, 465, 234 S. W. (2d) 994.

There can be no question as to the right of claimants to present records of the business and what might be considered physical facts concerning the same, where the same are material to the issues in this case. At the time these claims arose, one of the former owners of the business was dead and the other was in failing health. No additional person was employed to carry on the business. Claimants had to "double up." Profits soared from $38,000 in 1956 to $63,000 in 1957. Some one was necessarily looking after the affairs of the company in a highly competent manner and, under the undisputed facts in the case, it was not Mr. Padgett. Every reasonable inference points to the efforts of the three claimants as being responsible therefor. In addition, the testimony of Mr. Utley supports such a conclusion.

Mr. Utley testified that the decedent informed him of his intention to "make up to them" for "What he had not given them" and "when he cleared the inventory, he was going to settle with them." It is inconceivable that the decedent would have carried on such conversations with one of his closest friends in such manner, if he did not feel an obligation to the claimants for what had been done by them for him. Moreover, it appears to us that the use of the words "settle with them" by the decedent indicates the existence of a contract or an agreement, as such an expression would not have been employed ordinarily had the decedent been referring to a gift and not an obligation.

Also, there is a pattern for the payment of bonuses to the claimants for their work in 1957, as bonuses were paid to them in 1956, even though no formula for the same appears in the record.

There was considerable discussion between Mr. Utley and the decedent concerning the latter's income tax payments. No doubt he was influenced by this situation or condition in his decision to pay extra compensation to his employees. At least, such a factor is usually considered by the modern employer in his transactions and business arrangements with his employees, and we think it important in this case.

Mr. Utley's testimony was to the effect that decedent was obligated, or at least expected, to pay them "much more than $2,000.00." It may be conceded that this observation was more in the nature of an opinion or impression than a statement of fact, yet it was received in evidence without objection. No effort was made to contradict such evidence, nor were any circumstances established which would be inconsistent with the truth thereof. On the contrary, all the circumstances in the case support the truth of the statement. Bank of Hendersonville v. Dozier, 24 Tenn. App. 178, 142 S. W. (2d) 191.

Under the statute governing appeals of this nature, the hearing of any issue of fact or of law in the appellate court shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the judgment or decree of the trial court, unless the preponderance of the evidence is otherwise. Sec. 27-303, T. C. A.

The burden is upon the Executor to establish that the evidence preponderates against the judgment of the trial court. Morrell v. Republic Fire Ins. Co., 168 Tenn. 137, 76 S. W. (2d) 317; Jackson v. Jackson, 25 Tenn. App. 198, 154 S. W. (2d) 797.

■ In our opinion, the Executor has failed to carry this burden as we find competent material evidence in the record to support the judgment of the lower court. Accordingly, the second assignment of error is overruled.

It follows that the judgments entered in the lower court on all three claims are affirmed and the Executor, and his corporate surety, will pay the costs.

Avery, P. J. (Western Section), and Bejach, J., concur.