IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JULY 21, 2004 Session

## IN RE: THE ESTATE OF JOAN M. HAWKINS, DECEASED
## JAN RECTOR & SARA TUCKER
## v.
## FRANK DANIEL MURCHISON, JR.

**Direct Appeal from the Probate Court for Shelby County**
**No. C-3697     Donn Southern, Judge**

---

**No. W2003-02279-COA-R3-CV - Filed December 16, 2004**

---

This case arises out of a petition filed by Appellants to compel the executor of Decedent's estate to collect certain assets and a petition for declaratory judgment filed by Appellee. The trial court determined that Appellants' motion *in limine* to exclude certain evidence based on the parol evidence rule should be denied. Additionally, the trial court denied Appellants' objection to certain testimony based on the statute of frauds. The trial court further denied Appellants' objections to exclude testimony based on the Dead Man's Statute. The trial court determined that Decedent successfully gifted annual $10,000 sums to Appellee in the form of forgiving interest and principal owed by Appellee to Decedent as stated in a promissory note, finding there was clear, cogent, and convincing evidence to rebut the presumption that such transfers were advancements. Further, the court determined that such promissory note called for simple, rather than compound, interest, finding that Appellee owed Decedent's estate the sum of $64,297.78. Appellants seek review by this Court and, for the following reasons, we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Probate Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

W. Chris Harrison, J. Anthony Bradley, Memphis, TN, for Appellants

Blanchard E. Tual, Kelly P. Bridgforth, Memphis, TN, for Appellee

**OPINION**

**Facts and Procedural History**

Joan Murchison Hawkins ("Decedent") has four children, Jan Elizabeth Murchison Rector ("Jan"), Sara Jo Murchison Tucker ("Sara" or collectively with Jan, the "Appellants"), Frank Daniel Murchison, Jr. ("Danny" or "Appellee"), and Nancy Jean Murchison Jones ("Nancy"), from her marriage to her deceased husband, Frank Hawkins, Sr. ("Frank"). After Frank died, Decedent remarried Luther B. Hawkins, Jr. ("Luther"), in 1991. Luther and Decedent lived in separate homes, but after they married, Decedent decided to move into Luther's home in Cordova, Tennessee. As a result, Decedent desired to sell her home at 2370 Paper Birch Lane (the "Paper Birch house") to Danny, and on three occasions, Danny turned down Decedent's attempts, explaining that he could not afford the payments on the Paper Birch house at that time.

Ultimately, Decedent reached an agreement with Danny and his wife, Kathryn B. Murchison ("Kathy"), for the sale of the Paper Birch house. On May 2, 1991, Danny and Kathy signed a Promissory Note (the "Note") and a Deed of Trust (the "Deed of Trust") securing such Note. The pertinent provisions of the Note provide the following:

> For value received, We promise to pay to the order of Joan Head Murchison/Hawkins the principal sum of One Hundred Twenty Six Thousand Five Hundred ($126,500.00) Dollars,[1] together with interest thereon at a rate of 9 per cent per annum from date until maturity, each unpaid installment of principal and interest to bear interest at the rate of 9 per cent per annum after maturity.
>
> Said principal and interest are payable in installments in the following manner, to wit: Six Hundred and No/100 ($600.00) Dollars on the 1st day of August, 1991, and a like amount on the first day of each month thereafter until payment in full.[2]
>
> . . . .
>
> This note is secured by a deed of trust on real estate, of even date herewith, recorded in the office of the Register of Shelby County, Tennessee.

---

[1]   Though the Paper Birch house was appraised at $172,500 and held a sale price of $172,000, the closing statement for the sale of the house denotes that an allowance of $17,500 was given to Danny and Kathy for repairs to the wiring of the home, the city and county taxes on the house (totaling $618) were subtracted from the sale price, and a "gift" was given to Danny and Kathy in the amount of $27,382, which worked to reduce the amount of indebtedness on the Note to $126,500.

[2]   We are mindful that such an arrangement in the Note creates negative amortization, meaning that the monthly payments of $600 are inadequate to fulfill the interest obligation accruing at 9% per annum.

Additionally, Decedent executed a warranty deed dated May 2, 1991, conveying the Paper Birch house to Danny and Kathy. Though the Note provided that payments were to begin on August 1, 1991, and Danny and Kathy moved into the Paper Birch house in May 1991, Danny and Kathy did not begin making the $600 monthly payments until July 1992, because they were unable to sell their previous home until that time and could not afford to make payments on two houses. There was testimony by John M. Walker ("Mr. Walker"), Decedent's certified public account and executor of Decedent's estate, that Decedent gifted the missed payments from August 1991 to July 1992 by forgiving them and would not charge Danny and Kathy any payments until they sold their previous house. Danny further corroborated such testimony, stating that it was his understanding that these payments from May 1991 until July 1992 were forgiven. Therefore, Danny and Kathy paid $3,600 in interest in 1992 and $7,200 every year afterward. On her income tax returns, Decedent reported only the payments made by Danny and Kathy as interest income.

On April 26, 1991, prior to the closing on the Paper Birch house, Decedent executed a Will, containing the following provision:

> I have heretofore executed a Warranty Deed conveying my former home as [sic] 2370 Paper Birch Lane in Memphis, Shelby County, Tennessee, to my son, Frank Daniel Murchison, Jr., and his wife, Katherine B. Murchison, at an agreed and fairly appraised price of $172,000. In turn, my son and wife executed a Trust Deed and a Promissory Note to me for $126,500.00 at nine per cent per annum interest. None of the difference or balance of $55,500.00 was paid to me by my son. At the time of this transfer of this real property, I made a transfer to him of $45,500.000 as an advancement against his one-fourth share of my interest in my home at 2370 Paper Birch Lane. In addition thereto, I also made an advancement of $10,000.00 to him making a total of $55,500.00 as the credit towards the purchase of this property and representing the entire down-payment. By agreement, I will continue to give Frank Daniel Murchison and [sic] additional annual credit of $10,000.00 on the note and Trust Deed until either the house is paid in full or I die. This $45,500.00 and the initial $10,000.00 plus $10,000.00 annually is to be credited to him on June 1st of each and every year beginning in the year of 1992 and is to be charged against his share of my estate and all is considered as an advancement and to be deducted from whatever proceeds of my estate Frank Daniel Murchison would inherit. Frank Daniel Murchison agreed in the Promissory Note to pay me $600.00 per month towards the initial indebtedness of $126,500.00 and each monthly payment is to be used towards reducing the debt he owes me. When Frank Daniel Murchison satisfies this debt of $126,500.00 by the monthly payments of $600.00 and the annual additional gifts of $10,000.00 plus any other additional payments he wants to make, then I or my executor will execute the necessary release deed cancelling this trust debt and lien against this property.

On July 11, 1998, Decedent executed a holographic Will which, after stating it takes precedence over all prior Wills executed by Decedent, articulates the following statement regarding Danny's indebtedness:

> The estate is to be divided equally among my four children. In the event of the death of one of my children, that child's offspring (children) share equally in his or her estate.

> . . . .

> My son, Frank Daniel Murchison, Jr. owes each of his sisters 1/4 of the amount owed me for 2370 Paper Birch at the time of my death. That is to be paid to them from his share of the estate.

Finally, later in 1998, Decedent retained James T. Lowry, an attorney, to draft another Will, which Decedent executed on October 1, 1998. After revoking all of Decedent's prior Wills and Codicils, the October Will makes no mention of any agreement with Danny or any debt Danny owes Decedent. Instead, the Will has a residuary clause which provides as follows:

> Outright Gift of All Property to Children. I give, devise and bequeath all the rest, residue and remainder of my property of every kind and description (including lapsed legacies and devises) wherever situate and whether acquired before or after the execution of this Will, absolutely in fee simple to my surviving children, in equal shares, provided, however, the then living issue of a deceased child of mine shall take per stirpes the share their parent would have taken had he or she survived me.

Decedent died on February 27, 2001, at the age of seventy-four. On December 31, 2001, Appellants filed a Petition to Compel Executor to Collect Assets of the Estate, seeking an order from the probate court requiring the executor to collect the balance due under the Note and distribute such amount in accordance with Decedent's Last Will and Testament. On January 7, 2002, Appellee filed a Petition for Declaratory Judgment, seeking a determination of the amount due under the Note which considers the fact that Decedent allegedly forgave $10,000 of the amount due under the Note each year until her death as an outright gift. After a hearing on this matter, the trial court determined that the Note called for simple interest, Decedent made outright annual gifts of $10,000 to Appellee in the form of forgiving a portion of the principal balance on the Note, and, consequently, Appellee owed Decedent's estate the sum of $64,297.78. Appellants seek review from this Court and present the following issues for our review:

> I.  Whether the trial court erred when it denied Appellants' motion *in limine* and allowed parol evidence of Decedent's Wills and alleged advancements or gifts by Decedent despite the existence of a Note and Deed of Trust detailing the sale of the Paper Birch house;

II.     Whether the trial court erred when it denied Appellants' objections based on the Dead Man's Statute;
III.    Whether the trial court erred when it denied Appellants' defense of the statute of frauds and allowed evidence of alleged oral advancements or gifts;
IV.     Whether the trial court erred when it found that Decedent intended to give and delivered outright gifts to Appellee in the form of the $10,000 credits on the Note;[3]
V.      Whether the trial court erred when it allowed the expert testimony of John M. Walker, Decedent's certified public accountant, over Appellants' objections of lack of disclosure and lack of qualification; and
VI.     Whether the trial court erred when it determined the amount owed under the Note should be computed using simple, rather than compound, interest, resulting in an amount of $64,297.78 due under the Note.

For the following reasons, we affirm.

## Standard of Review

"[R]eview of findings of fact by the trial court in civil actions shall be *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). For questions of law, this Court's scope of review is *de novo* with no presumption of correctness for the trial court's conclusions of law. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## Parol Evidence Rule

As an initial matter, Appellants present this Court with various evidentiary issues we must resolve before addressing the substantive issues. First, Appellants argue that the trial court erred when it admitted evidence of an "agreement" between Decedent and Danny to forgive $10,000 of the Note each year, when the agreement between the parties is contained in the Note and Deed of Trust in clear and unambiguous terms. To admit such evidence, Appellants argue, violates the parol evidence rule.

The general rule in Tennessee is that parol evidence is inadmissible to contradict or vary the terms of a written agreement. *Starnes v. First Am. Nat'l Bank of Jackson, Tenn.*, 723 S.W.2d 113, 117 (Tenn. Ct. App. 1986) (citing *Maddox v. Webb Constr. Co.*, 562 S.W.2d 198 (Tenn. 1978); *Santa Barbara Capital Corp. v. World Christian Radio Found., Inc.*, 491 S.W.2d 852 (Tenn. Ct. App. 1972)). However, parol evidence may be used to prove the existence of an independent collateral agreement. *Id*. (citing *Early v. Street*, 241 S.W.2d 531 (Tenn. 1951)). The Tennessee

_____

[3] The Appellants make no argument concerning the treatment of the $55,500 down-payment, and, therefore, we do not address it in this opinion.

Supreme Court has further elaborated on how to determine whether an oral agreement is separate and distinct from, or collateral to, an agreement in writing:

> In answering this question it seems to us that the authors of A.L.R. have given a very practical and satisfactory answer when they say that the "test for determining whether the alleged oral agreement is distinct and separate from the contract evidenced by the writing, so as to permit proof thereof by parol or extrinsic evidence not inconsistent with or contradictory to the writing, is whether the oral agreement is one which, considering the circumstances of the parties, the subject-matter, and the nature of the writing, would ordinarily have been embodied in the written instrument, had the parties intended that they should be bound thereby." 70 A.L.R. 759.

*Early*, 241 S.W.2d at 535.

It appears to this Court that any such credits from Decedent to Appellee, whether characterized as a gift or an advancement, would not act to contradict or vary the terms of the Note or the Deed of Trust. As the trial court noted, the Note and Deed of Trust "do not relate to gifts or refer to gifts" and make no reference to any future credits between Decedent and Appellee. Therefore, such future credits given by Decedent to Appellee could not alter or contradict any terms in the Note or Deed of Trust. In addition, we note that, given that the subject matter involves either gifts or advancements, the writing is a promissory note, and an agreement of future gifts or advancements is a subject that would not ordinarily be embodied in such a writing. Therefore, any "agreement" between Decedent and Appellee would appear to be separate and distinct from the agreement contained in the Note and Deed of Trust.

Additionally, we note that, even if the credits did vary or contradict the Note and Deed of Trust such that the parol evidence rule would apply, the credits involved transactions which occurred subsequent to the execution of the Note and Deed of Trust. "[T]he parol evidence rule does not forbid the introduction of evidence of an agreement made subsequent to the execution of the writing, although the effect of the subsequent agreement might add to, change, modify or abrogate the contract as evidenced by the writing." *Starnes*, 723 S.W.2d at 118 (citing *Brunson v. Gladish*, 125 S.W.2d 144 (Tenn. 1939)). The testimony at trial is undisputed that all such credits occurred, if at all, at some point subsequent to the execution of the Note and Deed of Trust. Therefore, if such credits altered or modified the Note or Deed of Trust within the contemplation of the parol evidence rule, the rule would not apply because any and all credits occurred after the Note and Deed of Trust were executed.

Finally, though Decedent's Will is dated April 26, 1991, and was executed by Decedent before Appellee signed the Note and Deed of Trust, such prior writing does not constitute a contract or an agreement such that the parol evidence rule would apply to exclude any evidence of credits given to Appellee by Decedent. Rather, the 1991 Will, as the trial court determined, "reflects an understanding of a plan at the time but not a contract or agreement." This is supported by the testimony of Kathy, who stated she was unaware of what was in the 1991 Will when it was written, and Danny, who stated that he did not see any of Decedent's Wills until after she died. Therefore,

the admission of the 1991 Will, and the admission of the testimony relating to subsequent credit transfers from Decedent to Appellee, were not in violation of the parol evidence rule.

## Dead Man's Statute

Next, Appellants argue that the trial court erred when it admitted evidence of statements by Decedent that she gave credits on the Note of $10,000 per year as outright gifts to Appellee. Section 24-1-203 of the Tennessee Code articulates Tennessee's version of the Dead Man's Statute:

> In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party. If a corporation is a party, this disqualification shall extend to its officers of every grade and its directors.

Tenn. Code Ann. § 24-1-203 (2000). Further, we note that "[t]he courts of this State have taken the view that our statute must be strictly construed as against the exclusion of the testimony and in favor of its admission." *Baker v. Baker*, 142 S.W.2d 737, 744 (Tenn. Ct. App. 1940) (citing *Montague v. Thomason*, 18 S.W. 264 (Tenn. 1891); *Rielly v. English*, 77 Tenn. 16 (Tenn. 1882); *Hughlett v. Conner*, 59 Tenn. 83 (Tenn. 1873)).

Initially, we note that, because the Dead Man's Statute eliminates the testimony of only a party to an action by or against an executor of an estate, it is clear that all witnesses except Danny and Mr. Walker are outside the scope of the Dead Man's Statute, because none of them could be considered a "party" to the suit as instituted against Decedent's estate. Next, with regard to Mr. Walker's testimony, we note that his testimony falls outside of the scope of the Dead Man's Statute. Mr. Walker is the executor of the estate and was called as a fact and expert witness. His testimony was elicited by Appellee, who filed a petition for declaratory judgment against Decedent's estate. *See Atchley v. Rimmer*, 255 S.W. 366, 369 (Tenn. 1923). Therefore, Mr. Walker is a party who was "called to testify thereto by the opposite party," and his testimony was properly admitted over Appellants' objections based on the Dead Man's Statute.

Finally, we note that it appears Appellee's testimony should have been excluded based on the Dead Man's Statute. Appellee sought a declaratory judgment from the trial court to establish a lesser liability on the Note exhibiting an indebtedness to Decedent's estate. There is no question that portions of Appellee's testimony related to transactions or statements by Decedent. Finally, we note that Appellee was called to testify by Appellants and not the estate, and Appellee's interest in reducing his liability on the Note is contrary to the estate. Therefore, it cannot be said that Appellee was called to testify by the "opposite party" such that the Dead Man's Statute would not apply. However, the record indicates the trial court relied not only on Appellee's testimony, but the testimony of all witnesses and the trial exhibits. After reviewing the record, we conclude that such error by the trial court in admitting Appellee's testimony concerning the statements of Decedent was

harmless because the judgment is supported by evidence other than such incompetent evidence and there is no material evidence to the contrary with respect to statements by Decedent. *See Durham v. Webb*, 330 S.W.2d 355, 359 (Tenn. Ct. App. 1959). For these reasons, we cannot say that the trial court committed reversible error when it determined the Dead Man's Statute did not apply to the testimony of the witnesses, concerning statements made by Decedent evidencing an alleged gift or advancement to Appellee.

## Statute of Frauds

Appellants' final evidentiary issue concerns the statute of frauds. Specifically, because the indebtedness at issue that was allegedly forgiven is a debt for the transfer of real property, Appellants contend that such a transfer must be in writing pursuant to the statute of frauds which provides as follows:

> (a) No action shall be brought:
> (1) To charge any executor or administrator upon any special promise to answer any debt or damages out of such person's own estate;
> (2) To charge the defendant upon any special promise to answer for the debt, default, or miscarriage of another person;
> (3) To charge any person upon any agreement made upon consideration of marriage;
> (4) Upon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one (1) year; or
> (5) Upon any agreement or contract which is not to be performed within the space of one (1) year from the making of the agreement or contract;
> unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party.

Tenn. Code Ann. § 29-2-101(a) (2000).

As noted above in our discussion of the inapplicability of the parol evidence rule, we do not believe the statute of frauds should apply to these facts. The transfer of the Paper Birch house, which falls under section 29-2-101(a)(4) of the Tennessee Code, was memorialized in writing with the warranty deed, Note and Deed of Trust. However, the transaction at issue concerns either a gift or an advancement in the form of forgiveness of a debt, neither of which is encompassed by the statute of frauds.

Additionally, Appellants argue that Appellee and Decedent had an agreement of gifting, constituting a contract which could not be performed within the space of one year. We disagree. At no point was there a binding contract or agreement that Decedent would give Appellee $10,000 per year either as a gift or an advancement. As the trial court determined, Decedent and Appellee had only an understanding of what would occur in the future. Decedent could have at any time refused to continue to forgive Appellee's debt. Therefore, there was no "agreement or contract" between the parties, and section 29-2-101(a)(5) of the Tennessee Code does not apply. For these

reasons, we affirm the trial court's decision that the statute of frauds is inapplicable to the facts of this case.

## Evidence of a Gift

Next, Appellants argue that the trial court erred when it found that Decedent intended and delivered outright gifts to Appellee of $10,000 each year after the sale of the Paper Birch house in the form of forgiving Appellee's indebtedness to Decedent as memorialized in the Note executed by Appellee. Appellee contends that the evidence established the necessary elements for an outright gift in the form of forgiving the debt.

In Tennessee, a party claiming a gift has the burden of proving two essential elements: donative intent and delivery. *In re Estate of Garrett*, No. M1999-01282-COA-R3-CV, 2001 Tenn. App. LEXIS 764, at *28-29 (Tenn. Ct. App. Oct. 12, 2001) (citing *In re Estate of Bligh*, 30 S.W.3d 319, 321 (Tenn. Ct. App. 2000)). Delivery of a gift may be either actual or constructive. *Atchley*, 255 S.W. at 371. Additionally, we note that the party claiming a gift must prove these elements by "clear, cogent and convincing evidence." *In re Estate of Garrett*, 2001 Tenn. App. LEXIS 764, at *29 (citing *Bligh*, 30 S.W.3d at 321). "Any doubt must be resolved against the gift." *Id*. (citing *State ex rel. Teague v. Home Indem. Co.*, 442 S.W.2d 276 (Tenn. Ct. App. 1967)).

Our review of Tennessee jurisprudence reveals no prior case with like circumstances. However, we note that, in general, "[a] debt may be the subject of a gift by a creditor to his or her debtor." 38 Am. Jur. 2d *Gifts* § 45 (1999) (citations omitted); *see also* 38A C.J.S. *Gifts* § 48 (1996). Additionally, such gift in the form of forgiveness requires not only donative intent, but also "some objective act which extinguishes the debt or divests the creditor of his or her title thereto, such as the cancellation, surrender, or destruction of the instrument evidencing the debt, or the execution of a release, receipt, or satisfaction evidencing the extinguishment of the debt." 38 Am. Jur. 2d *Gifts* § 45 (1999) (citations omitted); *see also* 38A C.J.S. *Gifts* § 48 (1996); C.R. McCorkle, Annotation, *Gift of Debt to Debtor*, 63 A.L.R. 2d 259 (1959). Additionally, this type of gift "may be effectuated . . . by other means, such as . . . instructions to a third person as to the disposition of the obligation . . . ." C.R. McCorkle, Annotation, *Gift of Debt to Debtor*, 63 A.L.R. 2d 259 (1959) (citations omitted).

The Tennessee Supreme Court has held that the cancellation of a note does not have to be in writing. *Henson v. Henson*, 268 S.W. 378, 380 (Tenn. 1924). However, in *Henson*, the court addressed the circumstance where the creditor/decedent directed his wife to destroy the notes evidencing the indebtedness of the debtor, and the wife carried out this instruction. *Id*. at 378. "A gift of a debt to the debtor cannot ordinarily be effectuated by a mere verbal declaration." 38 Am. Jur. 2d *Gifts* § 45 (1999) (citations omitted); *see also Atchley v. Rimmer*, 255 S.W. 366, 372 (Tenn. 1923) (stating that, in the case requiring the actual delivery of a note, "the declarations of a donor that he had given the property in controversy to the claimant thereof will not perfect a gift incomplete for want of actual delivery, and the fact of delivery must be shown by other evidence than the mere declaration of the donor.").

In this case, Appellee sought to prove the existence of outright gifts in the form of the $55,500 down-payment at the time of the sale of the Paper Birch house and the $10,000 annual credits on the home for each year until the year 2000. The trial court found that such amounts were intended to be outright gifts by the Decedent to Appellee and reduced the amount due on the Note to reflect this intention. Under the facts and circumstances of this case, we agree with the trial court's finding that there was clear, cogent and convincing evidence that such credits were outright gifts.

Initially, we note that there is no written evidence in the form of an executed release, receipt or satisfaction of these credits. The only written evidence in the record to establish the existence of the credits is Decedent's 1991 Will. That Will states that such credits were to be treated as "advancements" and were to be charged against Appellee's share of Decedent's estate. However, Decedent instructed her certified public accountant, Mr. Walker, to "credit" the balance due on the Note by $10,000 each year until the year 2000. Kathy further testified that Decedent told her of the instructions to Mr. Walker. Additionally, there was testimony by Mr. Walker that he advised Decedent of the $10,000 annual exemption from the federal gift tax.[4] Further, Decedent revoked her 1991 Will when she executed her 1998 holographic Will and 1998 attested Will, establishing her intention to revoke the characterization of the prior credits as "advancements." In addition, there was evidence that Appellee and his family could not afford to purchase the Paper Birch house, necessitating smaller payments on the interest and resulting in negative amortization on the Note. Such evidence may be construed to establish an intent on the part of Decedent to treat the alleged credits as outright gifts.

Though a written release, receipt, or satisfaction executed by Decedent as donor and given to Appellee as donee would have firmly established constructive delivery of an outright gift of this nature, we agree with the trial court that, under the circumstances of this case, the actions and statements of the Decedent are adequate proof, by clear, cogent, and convincing evidence, of constructive delivery and, therefore, outright gifts in the form of forgiveness of the debt. The testimony of various witnesses, interested and disinterested alike, was that Decedent made declarations to the effect that she was forgiving $10,000 of Appellee's indebtedness each year. This included instructions by Decedent to Mr. Walker, her certified public accountant, that she wished to reduce Appellee's indebtedness on the Note by $10,000 each year. Additionally, Decedent's 1991 Will, which refers to such credits as advancements, was revoked by the terms of her 1998 holographic Will and 1998 attested Will. For these reasons, we affirm the trial court's finding that the alleged transfers were outright gifts from Decedent to Appellee.

### John Walker's Expert Testimony

Next, Appellants argue that the trial court erred when it permitted Mr. Walker, Decedent's certified public accountant, to testify as to the value of the Note, specifically whether the Note

---

[4] During the time period involved in this case, the annual exclusion amount for gifts was $10,000 pursuant to 26 U.S.C. § 2503.

required simple or compound interest, due to Appellee's lack of disclosure of Mr. Walker as an expert witness and Mr. Walker's lack of qualification as an expert.

As an initial matter, we note that "questions regarding the admissibility, qualifications, relevancy and competency of expert testimony are left to the discretion of the trial court." *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 263 (Tenn. 1997) (citing *State v. Ballard*, 855 S.W.2d 557, 562 (Tenn. 1993)). In this case, Mr. Walker testified that he had worked as a certified public accountant since 1961, he held his Bachelor of Science degree in accounting from the University of Southern Mississippi, and he had experience in reviewing promissory notes over his tenure as an accountant, classifying such documents as "common" in his profession. Additionally, Mr. Walker stated in his deposition that he routinely prepared amortization schedules for promissory notes. Under the circumstances of this case, we cannot say that the trial court abused its discretion when it determined Mr. Walker was qualified to testify as an expert witness with regard to the manner in which interest would be calculated on the Note.

Next, Appellants argue that the trial court erred when it allowed Mr. Walker to testify as to whether the Note called for simple or compound interest when Appellee had not stated that Mr. Walker would be utilized as an expert witness during discovery. As previously stated by the Tennessee Supreme Court, "[n]o sanctions against a party are provided for the failure to 'seasonably' supplement a response to an interrogatory requesting the identity of expert witnesses expected to testify at trial." *Lyle v. Exxon Corp.*, 746 S.W.2d 694, 699 (Tenn. 1988). "Excluding the testimony of an expert witness *may* be an appropriate sanction for failure to name the witness." *Id*. (emphasis ours). "To determine the proper sanction,

> [T]he trial judge should consider:
> 1. The explanation given for the failure to name the witness;
> 2. The importance of the testimony of the witness;
> 3. The need for time to prepare to meet the testimony; and
> 4. The possibility of a continuance."

*Id*. (citing *Strickland v. Strickland*, 618 S.W.2d 496, 501 (Tenn. Ct. App. 1981)).

In this case, we note that, in Appellants' request for the identity of expert witnesses testifying on behalf of Appellee, Appellee lists the identity of Mr. Walker. Additionally, Mr. Walker had a deposition taken prior to trial in which he testified to what he believed the value of the Note was and included an amortization schedule for the Note. Therefore, we cannot say that the trial court abused its discretion when it admitted the testimony of Mr. Walker concerning the interest called for in the Note.

As an ancillary matter, we note that, after reviewing the record, even if the trial court erred in admitting Mr. Walker's testimony regarding the interest called for by the Note, such error would be harmless because of the testimony of John McKee, a prior attorney of Decedent who prepared the Note. Tenn. R. App. P. 36(b) (2004). Mr. McKee stated that the Note would only result in interest

computed on interest if Appellee fell behind in payments. For these reasons, we affirm the trial court's admission of Mr. Walker's testimony concerning the type of interest called for in the Note.

## Simple or Compound Interest

Finally, Appellants contend that the trial court erred when it determined that the Note called for simple, rather than compound, interest. The cardinal rule for interpreting contracts is to ascertain the intention of the parties and give effect to that intention. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975) (citing *Petty v. Sloan*, 277 S.W.2d 355 (Tenn. 1955)). Where there is no ambiguity, this Court must attribute the ordinary meaning to the words used and neither party is to be favored in their construction. *Brown v. Tenn. Auto. Ins. Co.*, 237 S.W.2d 553, 554 (Tenn. 1951). In other words, this Court's duty is to enforce contracts according to their plain terms. *Bob Pearsall Motors*, 521 S.W.2d at 580 (citing *Eleogrammenos v. Standard Life Ins. Co.*, 149 S.W.2d 69 (Tenn. 1941)). "The interpretation of a written contract is a matter of law and not of fact." *Campora v. Ford*, 124 S.W.3d 624, 628 (Tenn. Ct. App. 2003) (citing *Rainey v. Stansell*, 836 S.W.2d 117 (Tenn. Ct. App. 1992)).

In this case, the only reference the Note makes to interest on interest, which would constitute compound interest, states "each unpaid installment of principal and interest to bear interest at the rate of 9 per cent per annum after maturity." The Note further states that "[s]aid principal and interest are payable in installments in the following manner, to wit: Six Hundred and No/100 ($600.00) Dollars on the 1st day of August, 1991, and a like amount on the first day of each month thereafter until payment in full." The Note calls for interest on any "unpaid installment" of interest. The Note defines "installment" as a payment of $600 on the first day of each month beginning on August 1, 1991. After reviewing the Note and the testimony of Mssrs. Walker, Nunan, and McKee, we conclude the trial court properly found that the interest on the Note is simple interest and that interest could only accumulate on interest in the event that Appellee failed to pay a monthly "installment" of $600. Therefore, we affirm the trial court's conclusion that the amount due on the Note should be computed using simple, rather than compound, interest. For this reason, we also affirm the amount due on the Note determined by the trial court.

## Conclusion

For the reasons stated above, we affirm the trial court's determination that the parol evidence rule did not apply to the testimony. We also affirm the trial court's decision that the statute of frauds did not apply to the testimony. Further, we affirm the trial court's determination that the Dead Man's Statute did not apply to the testimony regarding statements made by Decedent except for the testimony of Appellee, Frank Daniel Murchison, Jr. We affirm the trial court's finding that Decedent

successfully made outright gifts to Appellee.  We affirm the trial court's admission of John Walker's testimony regarding the type of interest called for in the Note and affirm the trial court's conclusion that the amount due on the Note should be calculated using simple interest.  Costs of this appeal are taxed to Appellants, Jan Elizabeth Murchison Rector and Sara Jo Murchison Tucker, and their surety for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE