# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### August 16, 2007 Session

## DENNIS HALL, ET AL. v. THOMAS HOWELL FOWLER, ET AL.

**Direct Appeal from the Chancery Court for Fayette County**
**No. 11978     James L. Weatherford, Chancellor**

---

**No. W2006-00385-COA-R3-CV - Filed December 28, 2007**

---

In this action to quiet title in ancestral land held as a tenancy in common, the plaintiff co-tenants challenged two deeds conveying a portion of the land to a grantee outside the family. The defendant grantee procured two deeds to an undivided fractional interest in this property for the sum of $3,500. The first deed was executed by some of the heirs of a record co-tenant, and the second deed originated from two sons of a record co-tenant's non-marital child. At that time, both the co-tenant of record and his non-marital child were deceased. Five days later, the grantee conveyed his interest in the subject property to a subsequent grantee for $21,000. The trial court set aside all deeds to the grantee, in part, on the ground of fraudulent procurement. It also set aside the deed to the subsequent grantee because the grantee had no title to convey. The court quieted title to the subject property in the plaintiff family members according to a series of quit claim deeds they had executed and recorded so as to partition the property among themselves. Further, the trial court ordered, *sua sponte*, the grantee to return the purchase price of the subject property, plus pre-judgment interest, to the subsequent grantee. Finding support in the record for setting aside the conveyances from only two of the original six grantors, we affirm in part, vacate in part, reverse in part, and remand for a calculation of the respective interests in the property and for a determination regarding the subsequent grantee's counterclaim for a partition in kind.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part;**
**Vacated in part, Reversed in part and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, J. and HOLLY M. KIRBY, J., joined.

Thomas Burrell, *Pro se.*

Ivan D. Harris, Jr., Collierville, Tennessee, for the appellant, Thomas Howell Fowler.

John S. Wilder, Sr., and Joseph W. Archer, Somerville, Tennessee, for the appellees, Emma Lee Hall, Jean Hall Miller, Wilma Hall Patterson, Ercille Hall Williams, Evelyn Hall Little, Lela Hall Greene, Sam Hall, Julia Lockridge, Grady Cheryl Williams, Mary Gates, James E. Williams, Gloria

Williamson, Mary Bonner, Sheila Bonner, Mary Jewel Bonner, Dennis Bonner, Lonnie Bonner, Virgie Burham, Johnnie Mae Evans, Sidney Hall and Velma Hall Tate.

## OPINION

This case involves a dispute over two tracts of ancestral land (totaling approximately 131 acres) owned by the family of Sam and Hattie Hall for some one hundred years. Sam and Hattie Hall, ancestors of the Plaintiffs, had eight (8) children: Addie Mae Tucker, Cliff Hall, Mattie O. Hare, Fannie Bonner, Dennis Hall, Julia Lockridge, John Sidney Hall, and Samuel Hall. After Sam died, Hattie executed a partition deed in 1962, retaining a dower interest, establishing a tenancy in common, and specifying that Addie Mae, Cliff, Mattie, and Samuel[1] would each retain a 17.26% interest in the two parcels totaling 131 acres. Fannie's three children who survived her would each take a 4.57% interest in the land, and the four children surviving John Sidney would each retain a 4.32% interest. Apparently, Julia and Dennis received property through collateral agreements and conveyances not at issue here. Following Hattie's death, Addie Mae died intestate, with no surviving spouse or issue. Prior to trial, the parties stipulated to the above facts.

In 1995, Thomas Burrell ("Mr. Burrell"), acting as President of American Logistical Properties, Inc. ("ALP"), secured two deeds to some portion of this property. On June 7, 1995, four (4) heirs[2] of Mattie O. Hare ("Mattie's Heirs") executed the first deed in exchange for $2,500. The grantors included Mattie's granddaughters Carolyn and Denetria, who survived Mattie's son Otis and took his share of the land. The other grantors were two of Mattie's seven children, Rufus and Joyce. The deed appeared to convey their undivided interest in the 131 acres but specified nothing more than that. Of the $2,500 sales price, ALP paid Denetria and Carolyn each $500, Joyce $900, and Rufus $600. The proof at trial established that Rufus could not read very well, if at all. Further, Rufus had a mental condition necessitating the appointment of a guardian. Joyce and Rufus testified that they thought they were borrowing money from Mr. Burrell, that Mr. Burrell told them they were signing a document to secure the loan, and that they never intended to sell their interest in the land. Denetria, on the other hand, testified that she knew she was selling her interest and had intended to do so. Finally, Carolyn did not testify.

Three days after the above conveyance, Kevin and Dale Hall, the two sons of Cliff Hall's non-marital child, executed the second deed in exchange for $1,000.[3] In 1991, Cliff Hall died testate,

---

[1]Because many of Sam and Hattie Hall's heirs share this last name, we will refer to all heirs by their given names for clarity.

[2]The stipulated facts show that seven of Mattie O. Hare's children survived her. Thus, the four grantors in this transaction were only some of Mattie's heirs.

[3]Although it is unclear whether ALP paid Kevin and Dale a total of $1,000 or $2,000, we will presume it paid a total of $1,000 based upon Mr. Burrell's testimony. He conceded paying a total of $3,500 for all transactions under consideration, which leads to the conclusion that Kevin and Dale received, together, the lesser amount.

with no surviving spouse.[4] He had a son named Leroy, born out of wedlock, who predeceased him. In his will, Cliff referred to Leroy as his son and left certain tracts of land (but not the subject property) to Leroy's two sons, Kevin[5] and Dale. The will also identified them as Cliff's grandsons.

On June 15, 1995, only five days after securing the deed from Kevin and Dale, ALP sold its interest in the subject property to Thomas Howell Fowler ("Mr. Fowler") for $21,000. Mr. Fowler testified that he purchased an undivided interest in the land and believed it to total approximately 31 or 32 acres.

Between the above conveyances and the filing of the quiet title action, Mr. Burrell recorded his deeds, twenty-one members of the Hall family, including Mattie's Heirs, attempted to partition the property among themselves into eight tracts of land by recording a series of quitclaim deeds, and, finally, Mr. Fowler recorded his deeds.

On September 19, 1997, the Plaintiffs[6] in this matter filed a Complaint to Quiet Title in the trial court and named as defendants Rufus, Joyce, Carolyn, Denetria, Mr. Burrell doing business as ALP, and the unknown and unborn heirs of Sam and Hattie Hall. In July of 2002, the Plaintiffs joined Mr. Fowler as a necessary party and amended their complaint to name him as a defendant. In the amended complaint, the Plaintiffs requested that the court quiet title to the subject property in them according to the partition deeds they had executed and recorded, and award attorney fees and other general relief.

Mr. Fowler answered on August 20, 2002, and on June 23, 2003, with leave of court, he counterclaimed for a partition in kind, for injunctive relief, and for an award of reasonable attorney fees and costs. In their answer to Mr. Fowler's counterclaim, the Plaintiffs asserted that he was not a "person entitled" to seek partition under the Tennessee Code because he did not own the property. They averred that Kevin and Dale Hall had never owned any part of the property and so had conveyed nothing to Mr. Fowler; they further asserted that ALP had procured the deeds from Rufus, Joyce, Denetria, and Carolyn by fraud.

---

[4] The record reflects that Cliff Hall was married to Ella Mae Hall at one time, but she apparently predeceased him.

[5] The will referred to a grandson named Larry Hall, but there is no dispute that Cliff referred to Kevin as "Larry" or that Kevin was the intended beneficiary denominated as his grandson "Larry."

[6] The individuals named as Plaintiffs in this matter have changed during the course of litigation. The caption of the original complaint reflected the following Hall family members as party plaintiffs: Dennis Hall, Sam Hall, Julia Lockridge, Grady Cheryl Williams, Mary Gates, James E. Williams, Gloria Williamson, Mary Bonner, Sheila Bonner, Mary Jewel Bonner, Dennis Bonner, Lonnie Bonner, Virgie Durham, Johnnie Mae Evans, Sidney Hall, and Velma Hall Tate. As noted below, Kevin and Dale Hall were added as plaintiffs prior to trial. Additionally, following the death of Dennis Hall on March 24, 2005, his wife and children were substituted as plaintiffs. Ercille Hall Williams, the only Plaintiff (other than Kevin and Dale) to testify at trial, is Dennis Hall's daughter.

On March 8, 2004, the Plaintiffs moved to amend the complaint so as to remove Rufus, Joyce, Denetria, and Carolyn as defendants, to add them as plaintiffs, and to add Kevin and Dale as plaintiffs. On July 22, 2005, the court entered a consent order allowing the addition of Kevin and Dale Hall as party plaintiffs. After the filing of the second amended complaint, Mr. Burrell filed a joint answer on his own behalf and that of ALP. He moved to dismiss the action against himself and ALP for failure to state a claim upon which relief can be granted, to strike certain allegations in the complaint, and to set a hearing on the matter. The trial court denied the motions and set the matter for trial.

The trial took place on December 14, 2005, and the Plaintiffs contended that Mr. Burrell had fraudulently procured the first deed and that the second deed conveyed nothing because Kevin and Dale owned nothing. Kevin and Dale first testified to their relationship with Leroy and Cliff and to the circumstances surrounding the execution of the deed to ALP. Ms. Ercille Hall Williams ("Ercille"), a Plaintiff and Hall family member, also gave testimony regarding the nature of Kevin's and Dale's connection to the Hall family. Joyce and Rufus then detailed the circumstances of their dealings with Mr. Burrell and ALP, followed by the testimony of Mr. Burrell and Mr. Fowler. Finally, Denetria took the stand and affirmed the sale of her interest to ALP.

The trial court set aside the deeds from Mattie's heirs and from Kevin and Dale to ALP. Holding the deeds to ALP to be "void and of no effect whatsoever" in his order, the chancellor set them aside "based upon the terms and circumstances" surrounding their respective executions. At the close of trial, the chancellor found the transaction to be unfair and expressly noted Rufus's mental condition as well as his inability to read. The chancellor also acknowledged that Rufus and Joyce thought the sale was a loan transaction. He stated:

> I am as confident as anything that I've seen happen here today that Mr. Rufus Hare thought he was going to get a loan and he was going to pay it back and went to pay some of it back and his property had been sold. I just cannot - - not let that stand. I think then again when you [consider the difference between the purchase and sale price], there's just a little smell of something wrong there and I'm not going to let that deed stand.

Further, in setting aside those deeds, the trial court found that ALP had nothing to convey to Mr. Fowler, thus rendering the deed to Fowler a nullity. The court quieted title in the plaintiffs and, even though Mr. Fowler had not filed a cross-claim against ALP, awarded him the purchase price of $21,000 plus pre-judgment interest. Mr. Burrell and Mr. Fowler filed timely notices of appeal. This Court dismissed the appeal of ALP (but not of Mr. Burrell) for failure to timely file a brief.

### *Issues Presented*

On appeal, Mr. Burrell presents the following issues, as slightly reworded, for our review:

1. Does Mr. Burrell have a liberty and/or property interest in the subject lawsuit?

2. Was the accusation of fraud against Mr. Burrell the result of obstruction and subornation to perjured testimony?

3. Did Mr. Burrell defraud [Denetria, Carolyn, Rufus, and Joyce] of their property interest in the subject lawsuit?

4. Did the trial proceeding in the subject lawsuit deny Mr. Burrell due process and equal protection of the law?

Mr. Fowler, in turn, raises the following issues:

1. Do Plaintiff[]s have standing to set aside a transaction to which they are not a party?

2. Can the court set aside a conveyance in the face of an affirmation of the conveyance by the grantor?

3. Does whether a party believes he or she has a property interest [affect] the validity of the conveyance?

4. Can the court set aside conveyances where the subject property has been conveyed to an innocent, third party and purchased for adequate consideration?

5. Was Appellant, Thomas Howell Fowler, entitled to partition?

### *Standard of Review*

For cases tried without a jury, our standard of review is *de novo* upon the record, according a presumption of correctness to the trial court's findings of fact and disturbing those findings only where the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App.2001). We review the trial court's legal conclusions *de novo*, with no presumption of correctness. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn.1997).

### *Analysis*

#### I. *Whether Mr. Burrell Has Standing to Appeal*

This Court dismissed ALP's appeal for failure to file a brief; however, Mr. Burrell submitted a brief and appeared pro se before this Court. The record reflects that ALP, not Mr. Burrell, purchased and sold the land in dispute. "Upon appeal, a party will not be heard to complain of error in the Trial Court unless he was adversely affected thereby." *A. C. Projects, Inc. v. Dixieland Co.*, No. 01A01-9207-CH-00297, 1992 WL 389615, at *2 (Tenn. Ct. App. Dec. 31, 1992)(quoting *S. Bell Tel. & Tel. Co. v. Skaggs*, 241 S.W.2d 126, 134 (Tenn. Ct. App. 1951)). The errors of which Mr. Burrell complains[7] would have prejudiced ALP if anyone, but not him. Mr. Burrell has no standing to appeal the trial court's action in setting aside the deeds in question. Accordingly, we will not consider the issues raised in his brief.

#### II. *Whether Plaintiffs Had Standing to Bring an Action to Quiet Title*

Because Rufus, Joyce, Denetria, and Carolyn were named defendants who conveyed their interest to ALP and because Plaintiffs had no interest in the land thus conveyed, Mr. Fowler asserts that they had no standing to bring the action in any event. "Standing is a judge-made doctrine which has no per se recognition in the rules. It is used to refuse to determine the merits of a legal controversy irrespective of its correctness where the party advancing it is not properly situated to prosecute the action." *Knierim v. Leatherwood*, 542 S.W.2d 806, 808 (Tenn. 1976). The doctrine rests upon the idea that "[a] court may and properly should refuse to entertain an action at the instance of one whose rights have not been invaded or infringed." *Mayhew v. Wilder*, 46 S.W.3d 760, 767 (Tenn. Ct. App. 2001) (quoting 59 Am. Jur.2d *Parties* § 30 (1987)).

The Plaintiffs were properly situated to prosecute this action, even without Rufus, Joyce, Denetria, and Carolyn as named plaintiffs, for three reasons. First, our review of the case law reveals that void deeds are subject to attack by third parties. In general, deeds procured by fraud or undue influence are voidable only at the election of the injured party or his privies. Indeed, "the party may confirm such deeds, and may refuse to assert his right, may acquiesce in the wrong done him, and no one can interpose to assert his right for him." *Swan v. Castleman*, 63 Tenn. 257, 266 (1874), 1874 WL 4279, at *4 (Tenn. Dec. Term 1874). In contrast, a deed that one "has no intention to execute, but executes under the impression that the instrument is of a different character from what it actually is" is absolutely void and subject to attack by one other than the injured party. *Swan,* 63 Tenn. at 266-67. In this case, the Plaintiffs alleged that Mr. Burrell procured the deeds under the guise of securing a loan and that the grantors never intended to sell their interest in the land.

---

[7]We note that, *sua sponte*, the court entered a $21,000 judgment for Mr. Fowler, against "Thomas Burrell, President of American Logistical Properties, Inc." Mr. Burrell does not challenge this portion of the judgment or even mention it on appeal. Accordingly, we will not address it here.

Second, the deed to ALP from Kevin and Dale, who were not record owners, purported to convey land the Plaintiffs arguably owned. One may bring an action to quiet title in realty in which he or she has at least an arguable interest. *See Indus. Dev. Bd. of City of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995). If there had ever been a window of time to prevail on this argument, Mr. Fowler would have missed it in any event. Even though he pled the defense of failure to state a claim[8] in his answer, he never moved to dismiss the action nor moved for a judgment on the pleadings. By the time the matter proceeded to trial, Kevin and Dale's conveyance, which was obviously adverse to the Plaintiffs' interests, had come to light and into dispute.

Third, and finally, Mr. Fowler's counterclaim for a partition necessitates such a determination. Because the partition of real property is inappropriate so long as the title is in dispute, *Campbell v. Lewisburg & N. R.R. Co.*, 26 S.W.2d 141, 145 (Tenn. 1930), Mr. Fowler placed the validity of his title in issue by seeking partition. We now turn to the merits of the case and begin with the conveyance from Mattie's Heirs to ALP.

*III.  Whether the Trial Court Erred in Setting Aside the Conveyance from Mattie's Heirs to ALP in Light of Denetria's Affirmation of the Sale*

Holding the deeds to ALP to be "void and of no effect whatsoever" in his order, the chancellor set them aside "based upon the terms and circumstances" surrounding their respective executions. We note that "[t]he right of the Court to order rescission is discretionary" and that "the Court should exercise this discretion very sparingly and only award it 'in case[s] where some such element as actual fraud, accident, mistake or insolvency . . . appear to justify it.'" *Early v. Street*, 241 S.W.2d 531, 536 (Tenn. 1951) (quoting *McMillan v. Am. Suburban Corp.*, 188 S.W. 615, 617 (Tenn. 1916)). We believe the trial court correctly found that the circumstances of this case warranted voiding the deed as to Rufus and Joyce, but conclude that the record does not support setting aside the conveyances from Denetria and Carolyn.

The Plaintiffs averred that ALP's President, Mr. Burrell, had fraudulently procured the deed from Rufus, Joyce, Carolyn, and Denetria. ALP acquired both deeds for a total of $3,500 and, within a matter of days, sold the same for six times that amount, or $21,000. But the vendors involved here owned various percentages of the land and received different prices. Based upon our rough calculations[9], it appears that ALP sold Rufus's interest for more than three times the purchase price, and Joyce's, Denetria's, and Caroline's interests for two times the purchase price. Mr. Fowler bought Kevin's and Dale's interest for almost fifteen times the purchase price paid by ALP.

---

[8]"If the named plaintiff is not a person entitled to bring and control the asserted claim, the defense of failure to state a claim upon which relief can be granted . . . provides an appropriate vehicle for presenting the issue of the plaintiff's entitlement to prosecute the action." Robert Banks, Jr., & June F. Entman, *Tennessee Civil Procedure* § 6-1(d) (2d ed. 2004).

[9]We base these calculations upon the ownership interests stipulated by the parties and have not factored the devolution of Addie Mae's interest into the analysis.

Inadequacy of consideration, without more, does not justify setting aside a deed. *Mackie v. Fuqua*, 14 Tenn. App. 176, 185 (1931), 1931 WL 1585, at *6 (Tenn. Ct. App. Nov. 21, 1931). If the parties have knowingly and deliberately set a price, regardless the amount, courts have no reason to interfere on the basis of the price term. *Id.* (citing *Stamper v. Venable*, 97 S.W. 812 (Tenn. 1906)). On the other hand, if one has obtained property at a grossly inadequate price, it being the product of some undue advantage from the vendee's misrepresentation or fraud, then the court may set aside the conveyance. *Id.* Although a grossly inadequate price that shocks the conscience raises a presumption of fraud,[10] most cases in which such conveyances have been declared void presented proof of inequitable circumstances coupled with the greatly inadequate consideration. *See, e.g., Stephens v. Ozbourne*, 64 S.W. 902, 902-03 (Tenn. 1901)(setting aside conveyance for fraud where fully informed vendee, knowing the illiterate vendor to be the owner but unaware of his title or the value of the property, induced him to sell land worth $1,000 for $5); *Mackie*, 14 Tenn. App. at 187-88, 1931 WL 1585, at *7 (finding material support for jury's verdict of fraud and grossly inadequate purchase price where vendee's agent induced the illiterate owner to sell her land for an inadequate price by falsely representing that an impending injunction would prohibit her from ever selling the property).

In this case, we conclude that the record supports the setting aside of Rufus's and Joyce's conveyances to ALP. Not only did ALP purchase their interests at inadequate prices – ranging from one-third to one-half the price paid by Mr. Fowler – but Mr. Burrell, its agent, represented to both of them that they were signing a deed of trust to secure their loan transactions. To whatever extent Mr. Burrell rebutted this in his testimony, the trial court's conclusion rested upon a credibility determination that we can find no reason to disturb. Further, Joyce testified that her financial need was significant at that time, and Rufus testified to being unable to read and to having a mental condition that had necessitated the appointment of a guardian. There is ample justification for setting aside these conveyances.

In contrast, we conclude the conveyances from Carolyn and Denetria should stand. Denetria testified that she knew she was selling her interest to ALP without reservation. She knowingly entered into this transaction, and we find no basis for disturbing it. Further, Carolyn did not testify at trial. The only evidence in the record about Carolyn's transaction is the price paid for her interest, which amounted to roughly half of what Mr. Fowler paid for it. This purchase price is not so grossly inadequate as to shock the conscience and raise the presumption of fraud. We accordingly affirm

---

[10]As reflected in our case law, the origins of this well-established rule lie in early English and American jurisprudence. *See Stephens*, 64 S.W. at 903. In 1984, however, the Tennessee Supreme Court adopted a more exacting rule for setting aside foreclosure sales on such grounds. *Holt v. Citizens Central Bank*, 688 S.W.2d 414, 416 (Tenn. 1984). It declined to follow the early case law and its progeny, holding that gross inadequacy of price alone could no longer form the basis for setting aside a foreclosure sale. *Id.* Instead, it adopted the following rule:

> If a foreclosure sale is legally held, conducted and consummated, there must be some evidence of irregularity, misconduct, fraud, or unfairness on the part of the trustee or the mortgagee that caused or contributed to an inadequate price, for a court of equity to set aside the sale.

*Id.* The facts of this case, however, do not involve a foreclosure sale.

the trial court's judgment with respect to the conveyances from Rufus and Joyce but reverse the same with respect to Carolyn and Denetria.

### IV. Whether Kevin and Dale Hall's Doubt Regarding Their Ownership Interest Affected the Validity of Their Conveyance to ALP

As noted above, the chancellor set aside the conveyances to ALP aside "based upon the terms and circumstances" surrounding the respective executions of the deeds. The chancellor's comments at the close of trial suggest that two considerations prompted him to set aside the deed executed by Kevin and Dale. First, he found it significant that Cliff's will devised property other than the disputed tracts to Kevin and Dale. Second, he noted that neither Kevin nor Dale believed he possessed any interest in the land.

Mr. Fowler contends that Kevin's and Dale's doubt as to their title did not affect the validity of the conveyance. The Plaintiffs contend this point is irrelevant because Kevin and Dale had nothing to convey to ALP, thus rendering the deed void. Before addressing Mr. Fowler's issue, we must first determine whether Kevin and Dale possessed any interest to convey to ALP. There is no doubt that Cliff's fractional interest in this real property passed by intestate succession: his will did not devise this property,[11] nor did it contain a residuary clause that might otherwise do so. When a decedent's will fails to dispose of the entire estate, the residual portion of the estate passes to the decedent's heirs according to the rules of intestate succession. Tenn. Code Ann. § 31-2-101 (2007). In general, the real property passing by intestate succession vests immediately in the heirs upon the death of the decedent. *Id.* § 31-2-103.

Cliff Hall died in 1991 with no surviving spouse. Where an intestate decedent is unmarried or dies without a surviving spouse, the property then passes to the issue of the decedent. *Id.* § 31-2-104(b)(1). "Issue" means lineal descendants of all generations, "with the relationship of parent and child at each generation being determined by the definitions of child and parent contained in this title." *Id.* § 31-1-101 (6). If Kevin and Dale were Cliff's surviving issue, then they would take equal shares of Cliff's interest in the ancestral land. *See id.* § 31-2-104(b)(1). On the other hand, if Kevin and Dale were not Cliff's issue because their father, Leroy, was born out of wedlock, then Cliff's fractional share would pass to Cliff's surviving brothers and sisters and to the issue of his deceased brothers and sisters by representation. *See id.* § 31-2-104(b)(3). Section 31-2-105 of the Tennessee Code addresses the requirements for establishing the parent-child relationship "[i]f, for purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through, or from a person." *Id.* § 31-2-105(a).

---

[11]Although the law presumes that a testator intends to devise all his real property, this presumption cannot control where the will plainly and unambiguously devises tracts of real property that do not embrace all the realty owned by the testator. *Oldham v. York*, 41 S.W. 333, 335 (Tenn. 1897). Cliff's will identifies the real property by acreage (twenty-four acres to be divided equally between the grandsons), by its location near Mason, Tennessee, and by its position adjacent to Mason/Longtown Road. There is no dispute among the parties that this property is not the same as Cliff's portion of the ancestral land at issue.

Because no one disputes that Kevin and Dale are Cliff's biological grandchildren, there is no need to resort to those provisions to determine if they inherited Cliff's interest in the land through their father. The record indicates that Cliff Hall held Leroy out as his son and Kevin and Dale out as his grandchildren, identifying them as such in his will and naming the two grandsons as beneficiaries. Even more, Cliff devised the twenty-four (24) acres of land on which he lived to Kevin and Dale. He also bequeathed all his personalty to them in the event that his wife, Ella Mae, should predecease him. The record reveals that Cliff Hall's will was duly probated in December of 1991 and that Kevin and Dale, identified as his grandsons, "the sons of [his] son, Leroy Hall," were the sole beneficiaries of the will. Cliff's siblings apparently did not contest the will or challenge this result in any way. Yet, according to Kevin, one of Cliff's siblings, along with the family's attorney, told him that if Cliff had wanted them to have his interest in the subject property, he would have devised it in the will.

Not only did Cliff openly acknowledge paternity in his probated and apparently uncontested will, but even the plaintiff family members do not dispute the fact that Kevin and Dale are Cliff's biological grandchildren. Ercille, the only Plaintiff other than Kevin and Dale to testify on this subject, stated that "Leroy Hall was the illegitimate son, as I have been told - - now I don't have any knowledge of that - - of Cliffie Hall. He was not a legal son as I've been told." Moreover, she confirmed this to be the understanding in her family. She additionally testified that Kevin and Dale Hall were the legitimate sons of Leroy Hall. When questioned regarding the allegation in the complaint that "Cliff Hall died without issue," Ms. Williams responded that she understood the term "issue" to mean children and that she had "been told" that Kevin and Dale were Cliff Hall's grandchildren. Yet, she testified that "[i]t's kind of a rule in my family that if you are not [born to married parents, then] you are not included as a – a legitimate child of the Hall family. That's a - - that's a rule." It appears that the plaintiff family members rely on the legal effect of Leroy's birth outside of wedlock, all the while acknowledging the biological reality. As there is no dispute that, biologically, Kevin and Dale are Cliff's lineal descendants, there is no need to resort to the Code's requirements for proving paternity for purposes of intestate succession. As the surviving issue of Cliff Hall, Kevin and Dale inherited Cliff's interest in the subject property and not only could, but did, convey that interest to ALP.

Further, we agree with Mr. Fowler's contention that Kevin and Dale's doubt as to title had no effect on the validity of the conveyance. Even though Kevin and Dale testified to believing they had no interest in the property, they both conceded that Mr. Burrell believed they might have an interest and offered them $1,000 to acquire it, taking the chance that he might be right. We believe that Kevin and Dale similarly agreed to take a chance that they had no interest, thinking they were taking $1,000 for nothing. According to their testimony, they understood at the time of executing the deed that they were conveying their interest, whatever that might be, to ALP. Rather than undermining the conveyance, their doubt as to title formed the basis for their bargain. With a price term of $1,000, the bargain was obviously unfavorable to them. Nonetheless, because the parties to the contract discussed the issues and negotiated a price, albeit approximately fifteen times less than that paid by Mr. Fowler only days later, the record provides no basis for setting aside the conveyance.

*V. Whether the Trial Court Erred in Setting Aside the Deeds*
*When Mr. Fowler Was a Bona Fide Purchaser for Value*

Mr. Fowler contends that the trial court erred in setting aside the deeds because he was a bona fide purchaser for value. As one who purchased his interest before and recorded his deeds after the execution and recordation of the heirs' quit claim deeds, he asserts that the recording statutes protect his interest in the realty. We disagree. Mr. Fowler purchased this interest from someone other than the record owner. At the time of the purchase, ALP had not recorded its deeds, and only some of the Plaintiffs were reflected as record owners. The records instead revealed ALP to be a lessee of the land pursuant to a lease executed only days before Mr. Burrell transacted ALP's purchase from Mattie's Heirs. Mr. Fowler cannot now seek protection in the very recording acts he failed to heed when he purchased the property.

### *Conclusion*

In light of the foregoing, we vacate the chancellor's judgment quieting title in the Plaintiffs according to their quit claim deeds executed and recorded so as to partition the property among themselves. Also vacated is that portion of the judgment setting aside the deed from ALP to Mr. Fowler. We reverse the judgment as it relates to the deed from Kevin and Dale Hall to ALP. Further, we reverse the judgment as it relates to the conveyances from Denetria and Carolyn to ALP but affirm it with respect to the conveyances from Rufus and Joyce. We affirm the judgment in all other respects.

We therefore remand the matter to the trial court for a calculation of the respective interests as indicated in this opinion. We note that the issue of the devolution of Addie Mae's fractional interest was not before this Court and so was not addressed, nor was there extensive information regarding the other heirs of Mattie O. Hare who were not involved in these transactions. These issues are for the trial court to sort out and factor into the calculation. Because the trial court did not address Mr. Fowler's request for partition in the previous proceeding, we also remand that issue for consideration now. Following a resolution consistent with this opinion, the trial court is directed to enter judgment accordingly. Exercising our discretion, costs of this appeal are taxed one-half to appellant, Thomas Burrell and one-half to appellant Thomas Howell Fowler and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

-11-